HARDING, J.
This Court has engaged in exhaustive efforts to balance the concerns of fairness and justice with the need for finality in postconviction proceedings in death penalty cases. During that process, we believe that a consensus has been reached as to the essential ingredients necessary to balance these competing concerns. Although we have not had the case management resources to provide information regarding the average length of capital postconviction proceedings, anecdotal evidence demonstrates and this Court has recognized *1215 that the time for resolving these matters has been excessive.[2]
After thoroughly considering the numerous concerns and issues raised in response to this Court’s proposed amendments to rules 3.851 (Collateral Relief After Death Sentence Has Been Imposed and Affirmed on Direct Appeal), 3.852 (Capital Posteon-viction Public Records Production), and 3.993 (Forms Related to Capital Posteon-viction Records Production) of the Florida Rules of Criminal Procedure, we amend rule 3.851 as reflected in appendix A to this opinion.[3] We are hopeful that the new rule will allow future capital posteonviction proceedings to be resolved within two years from the time the case becomes final, thereby eliminating the months and years of needless delay that we have seen in the past.
In recent years, we have found that cases are being resolved more expeditiously, due in large part to the implementation of this Court’s requirements for quarterly reports from the chief judges to the Chief Justice on the status of capital posteonviction cases, the Court’s requirement of mandatory training for judges handling capital cases, the Court’s adoption of rule 3.852 (“Capital Posteonviction Public Records Production”), and the development of registry counsel. These improvements notwithstanding, there is still more that needs to be done. Four components are essential to a balanced capital posteonviction system. First, a capital defendant facing execution must be promptly provided competent[4] posteonviction counsel charged with the responsibility of investigating the facts and circumstances of the ease and researching the applicable law in order to present all posteonviction claims in a timely manner. Second, in order for posteonviction counsel to effectively carry out this responsibility, counsel must be given reasonable time and adequate resources. Third, posteonviction counsel must have timely access to all information concerning the defendant’s case, especially public records from investigating and prosecuting agencies. Fourth, there must be active and reasonable judicial oversight of the posteonviction process to ensure that the defendant’s claims are timely investigated and fairly and efficiently processed once presented. Pursuant to the changes we adopt today, in addition to the continued support of the above components, the Court is confident that we can obtain the goal of achieving a prompt, fair, and efficient resolution of capital posteonviction proceedings.
Although we have incorporated several of the features of our original proposals into current rule 3.851, we have determined that a procedure that would begin the capital posteonviction process concurrently with the direct appeal process cannot be adopted at this time. This is because of the continued application of certain public records exemptions to capital posteonviction defendants which would impede the efficacy of our original proposed procedure by precluding collateral counsel from investigating potential posteonviction claims in a timely manner.
*1216 I. BACKGROUND
In developing our original proposals, we considered the proposed amendments to Florida Rule of Criminal Procedure 3.851 submitted by the Supreme Court Committee on Postconviction Relief in Capital Cases (the Morris Committee), which was charged with developing a case management plan for capital postconviction relief and recommending amendments to the existing capital postconviction procedures. See Amendments to Florida Rules of Criminal Procedure 3.851, 3.852 & 3.993, 772 So.2d 488, 489 (Fla.2000). We also were guided by the “dual-track” concept for capital postconviction proceedings contained in the Death Penalty Reform Act of 2000 (DPRA) .[5]
Our original proposals were designed to create a “dual-track” system similar to that contained in the DPRA. See Amendments to Florida Rules of Criminal Procedure 3.851, 3.852 & 3.993, 772 So.2d 532 (Fla.2000); see also Amendments to Florida Rules of Criminal Procedure 3.851, 3.852 & 3.993, 772 So.2d 488, 490 (Fla. 2000). They were intended to “eliminate those capital postconviction procedures that have historically created unreasonable delays in the process, while still maintaining quality and fairness.” Id. at 489; see also 772 So.2d at 533. The proposed rules were designed to promote the prompt and efficient processing of capital cases in a fair, just, and constitutionally sound manner while at the same time effectuating the Legislature’s intent, as expressed in the DPRA, to reduce unnecessary delays in capital cases by beginning the capital post-conviction process as early as possible after the imposition of a sentence of death and setting time limits for certain actions to be taken. See 772 So.2d at 489.
Under our original proposed amendments, fifteen days after the death sentence is imposed collateral counsel would be appointed under rule 3.851 and the public records production process would begin under rule 3.852. An initial motion for postconviction relief must be filed with the trial court within 180 days after this Court issues its mandate on direct appeal. Under the original scheme, counsel would begin a meaningful investigation of potential postconviction claims and all public records issues would be resolved well before the motion for postconviction relief was due to be filed in the circuit court. We noted, however, that if public records exemptions that do not end until the conviction and sentence become final on direct appeal[6] remained in place, counsel could be precluded from effectively investigating potential postconvietion claims in a timely manner. Thus, in order to ensure that the proposed scheme functioned as intended, we asked the Florida Legislature to address these exemptions. See 772 So.2d at 491. When the regular legislative session ended with the exemptions as applied to capital cases intact, the Court proposed revised rules. See Amendments to Florida Rules of Criminal Procedure 3.851, 3.852 & 3.993, 772 So.2d 512 (Fla.2000) (published order).
After reviewing the numerous comments filed and hearing oral argument on both our original and revised proposals, we postponed amending the rules until we *1217 could thoroughly consider a number of critical issues and concerns, a number of which we address below. See 772 So.2d at 533-34.
II. FILING OF RULE 3.851 MOTION IN THIS COURT
First, as requested by the Legislature,[7] we have considered the feasibility of requiring capital postconviction motions to be filed directly in this Court and have determined that such a change in procedure at this time would only serve to further delay the postconviction process. We have reviewed the Oklahoma procedures which require that capital postconviction actions be brought in the appellate, rather than in the trial, court ninety days from the date the last brief is filed on direct appeal. 22 Okla. Stat. § 1089 (2000). However, after reviewing the Oklahoma procedures, we believe that the large number of inmates on Florida’s death row militates against adopting such a system in this state.
Oklahoma currently has approximately 126 death-row inmates, while Florida currently has 373. Requiring that rule 3.851 motions be filed in this Court would present the Court with a large increase in original proceedings. The filing of original postconviction pleadings with this Court would require considerable time and additional resources. We do not determine that this procedure would enhance the disposition of these cases in a fair, just, and constitutionally sound manner.
Moreover, the new rules at issue here are the logical refinement of well-established, long-standing rules of procedure providing for the filing of capital postcon-viction motions in the trial court.[8] In contrast, the significantly different procedures that would be necessary if we were to require rule 3.851 motions to be filed in this Court most certainly would meet with new challenges and uncertainties that could take years to resolve. Finally, not only would this complete change in procedure result in new delays in the postconviction process, it necessarily would further delay the adoption of new rules because we would essentially have to begin the rule-amendment process anew and seek further committee input and public comment.
III. RULE OF DISCOVERY TO OVERRIDE EXEMPTIONS
Next, we decline to adopt a rule of discovery that, despite the continued existence of the public records exemptions at issue here,[9] would require production of records prior to a conviction and death sentence becoming final on direct appeal. We have given much consideration to the Solicitor General’s suggestion that this Court has “inherent” authority to adopt such a rule. However, since its inception in 1996, see In re Amendment to Florida Rules of Criminal Procedure — Capital Postconviction Public Records Production, 683 So.2d 475 (Fla.1996), Florida’s capital postconviction discovery rule — rule 3.852 — has been based on the broad public records production authorized under chapter 119. See Amendments to Florida Rules of Criminal Procedure 3.852 (Capital Postconviction Public Records Production) & Rule 3.993 (Related Forms), 754 So.2d 640, 643 (Fla.1999) (adopting rule 3.852 as a discovery rule for public records production ancillary to capital post-conviction proceedings); see also In re Amendment to Florida Rules of Criminal *1218 Procedure — Capital Postconviction Public Records Production, 683 So.2d 475 (Fla.1996) (adopting first version of rule based on public records production).
The public records exemptions at issue here have been interpreted to end upon the conviction and sentence becoming final on direct appeal, see State v. Kokal, 562 So.2d 324 (Fla.1990), and have functioned in harmony with our current capital post-conviction rules, and, as rule 3.852 has progressed, in most cases have allowed for timely records production under the current one-year time period. Therefore, we decline to adopt a rule of discovery that could be seen as an attempt to override these legislatively created exemptions. Rather, we defer to the Legislature to make the policy decision as to whether to retain the exemptions as they apply to capital defendants or remove them in order to allow for the adoption of a dual-track system as originally proposed. See art. I, § 24(c), Fla. Const, (authorizing the Legislature to provide by general law for the exemption of records otherwise accessible by the public, provided that the law states with specificity the public necessity justifying the exemption and the exemption is no broader than necessary to accomplish the stated purpose); see also Right v. Dugger, 574 So.2d 1066, 1068 (Fla.1990) (explaining that the Legislature has the constitutional power to regulate disclosure of public records); State v. Kokal, 562 So.2d at 326 (recognizing that only the Legislature can create exemptions to chapter 119).
IV. AMENDMENTS
Rather than adopting an entirely new rule, we have decided to amend current rule 3.851 to incorporate several of the proposals that have been suggested to the Court. The most significant changes are addressed below.
Appointment of Counsel
In order to ensure the prompt appointment of postconviction counsel, we have added subdivision (b). This provision requires the appointment of counsel upon the issuance of mandate from this Court on direct appeal.
Preliminary Procedures
We have added subdivision (c)(1), entitled Judicial Assignment, which provides for the assignment of a qualified judge within thirty days after the mandate issues on direct appeal. Consistent with this change, we also amend Florida Rule of Judicial Administration 2.050(b)(4) to reflect the same. Additionally, in order to provide constant oversight into the post-conviction process, we have also added subdivision (c)(2), entitled Status Conferences. This provision requires the assigned judge to conduct a status hearing not later than ninety days after the assignment of the case, and at least every ninety days thereafter until the evidentiary hearing has been completed or the motion has been ruled on without a hearing. These status conferences will permit the timely resolution of public records issues and other preliminary matters and will provide better case management to ensure the appropriate disposition of these cases. We recognize that the requirements for status conferences may be onerous for trial judges that already have overburdened calendars. Yet, we emphasize that there is a need for placing capital postconviction cases in a priority status to effectuate the prompt, fair, and efficient resolution of these matters.
Contents of An Initial Motion
After considering all the comments filed addressing an adequately pled initial motion, we believe that the requirements contained in subdivision (e), Contents of Motion, are sufficient to put the parties and trial court on notice as to what constitutes *1219 a sufficiently pled initial motion. We also believe that the information that must be included in an initial motion under subdivision (e), together with the information that must be disclosed at the case management conference under subdivision (f)(5), is sufficient to allow the State to prepare for an evidentiary hearing.
Under subdivision (e)(1)(D), the motion must include “a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought.” Significantly, subdivision (e) contains all the requirements that were contained in section 8(2) of the DPRA[10] and the Morris Committee’s proposal for a “fully pled” motion, except for the requirement that the motion include any documents supporting the claim, a list of witnesses and their affidavits or a proffer of their testimony. Under subdivision (f)(5), a case management conference must be held within ninety days after the state files its answer. At that conference, both parties must disclose all documentary exhibits that will be offered at the evidentiary hearing; provide an exhibit list that includes all exhibits; and exchange a witness list with the names and addresses of any potential witnesses. Expert witnesses also must be designated and copies of any expert reports must be provided. Thus, prior to the case management conference, the detailed allegations in the motion will provide the state with notice of the facts underlying claims for which an evidentiary hearing is sought; and, at the case management conference, the state will receive all documents or exhibits supporting the claims as well as a witness list. We believe these two provisions will allow both parties to adequately prepare for the evidentiary hearing.
Evidentiary Hearings
Amended rule 3.851, as did our proposals, requires that an evidentiary hearing be held on claims identified in an initial motion as requiring a factual determination. We have considered the comments in opposition to this requirement but continue to believe that “[i]n light of the large number of summary denials of initial motions which the Court has been compelled to reverse under the current rules ... this change will reduce unwarranted delay in many cases.” 772 So.2d at 489.
In contrast to the evidentiary hearing requirement for initial motions, under subdivision (f)(5)(B) we have left it up to the trial court to determine whether an evi-dentiary hearing should be held on a successive motion. Consistent with rule 3.850(d),[11] under new subdivision (f)(5)(B), “if the [successive] motion, files, and records in the case conclusively show that the movant is entitled to no relief, the motion may be denied without an evidentiary hearing.” Although evidentiary hearings on factually based claims contained in successive motions are not automatically required under the new rule, we encourage trial courts to liberally allow them on timely raised newly discovered evidence claims, and Brady[12] or Giglio[13] claims. This will *1220 avoid possible delays caused by the need to remand successive motions for factual development of such claims.[14]
V. PROCEDURES AFTER DEATH WARRANT SIGNED
Neither our original nor our revised proposals contained procedures to be followed after a death warrant is signed. In our July 14, 2000, opinion, we asked the Morris Committee to further study the need for such procedures. See 772 So.2d at 534. In its September 29, 2000, report, the Committee concluded that a provision addressing the procedure to be followed after a death warrant is signed would provide needed guidance to trial judges and therefore recommended that such a provision be added to proposed rule 3.851. The Committee pointed out that, since the courts do not schedule executions and do not regulate the time from the date the warrant issues until the prisoner is scheduled to be executed, the new provision must be flexible enough to accommodate these variables. With those realities in mind, the Committee recommends the following general concepts to be included in the new subdivision:
(1) Proceedings after a death warrant has been issued shall take priority over all other cases.
(2) The time limits of rule 3.851 and any other rule shall not apply to restrict the trial court.
(3) Proceedings in the trial court shall be scheduled expeditiously considering the time limitations imposed by the date of execution and the time required for appellate review and that a stay of execution be granted only as a last resort.
(4) Provisions for venue shall be suspended on motion after a death warrant has been issued. Venue shall be determined by the trial court considering the availability of witnesses or evidence, time limitations imposed by the date of execution, the security issues involved in the individual case, and any other factor determined by the trial court.
(5) The trial court shall electronically transmit a copy of any final order to the Supreme Court of Florida.
(6) The record on appeal shall be immediately delivered to the Clerk of the Supreme Court of Florida.
(7) The defendant’s presence should not be required except for the evidentia-ry hearing.
However, since the Morris Committee did not offer proposed language implementing its recommendations, we have not included them in the amended rule. We now ask the Morris Committee to work with the Criminal Procedure Rules Committee to draft a new subdivision incorporating these recommendations. The committees should file a joint report with proposed rules with the Clerk of this Court by January 1, 2002. Until such time as we adopt the new procedures, new subdivision (h) of rule 3.851, *1221 entitled “After Death Warrant Signed,” makes clear that the time periods provided for under the new rule must be expedited after a death warrant is signed. See also rule 3.851(f)(5)(B) as amended herein, providing that if warrant is signed the trial court shall expedite time periods in accordance with subdivision (h).
VI. OTHER STEPS TO IMPROVE CAPITAL POSTCONVICTION PROCESS
As we explained in our prior opinion, there are a number of other steps we have taken or are considering that will greatly improve the capital postconviction process. See 772 So.2d at 534. This Court already has mandated a training course on capital cases for circuit judges who preside over those cases[15] as well as minimum standards for conflict counsel in capital cases.[16] In our last opinion in this case, we asked the Morris Committee to consider the need for a statewide roster of judges qualified to preside over capital eases and are now considering the Committee’s recommendation that such a roster should be developed. See id. We also are considering proposed amendments to new rule 3.112 which would extend the standards to include public defenders, collateral counsel, and private counsel who handle capital cases. See In re Amendment to Florida Rules of Criminal Procedure-Rule 3.112 Minimum Standards for Attorneys in Capital Cases, SC90635 (oral argument held December 1, 2000). In connection with these proceedings, we recently adopted new Rule of Judicial Administration 2.070(f) which requires the chief judge of each circuit to enter an administrative order developing and implementing a circuit-wide plan to expedite the preparation of transcripts in all capital trials and capital postconviction proceedings. See 772 So.2d at 534-35. We believe these changes together with the amendments we adopt today will eliminate much of the delay in our capital postconviction process while at the same time promoting quality and fairness in the system.
CONCLUSION
Accordingly, we amend Florida Rule of Criminal Procedure 3.851 as reflected in appendix A to this opinion.[17] We also amend Florida Rule of Judicial Administration 2.050 as reflected in appendix B to this opinion. Additions to the rules are indicated by underlining; deletions are indicated by strike-through type. The amendments shall become effective October 1, 2001, at 12:01 a.m., and shall apply to all motions filed on or after that date. Motions pending on that date are governed by the version of rule 3.851 in effect immediately prior to that date. Interested parties shall have thirty days from the date of this opinion in which to file comments. We do not adopt the previously proposed amendments to Florida Rules of Criminal Procedure 3.852 and 3.993. The current versions of those rules shall remain in effect.
*1222 We would like to thank Governor Bush, former Speaker Thrasher, the Morris Committee, the Criminal Procedure Rules Committee, and the many other interested persons and organizations who filed comments and participated in oral argument. We have considered each of the comments and suggestions. The Criminal Procedure Rules Committee will continually evaluate the rules governing capital postconviction proceedings and may propose changes as it sees fit in accordance with Florida Rule of Judicial Administration 2.130(c).
It is so ordered.
SHAW, LEWIS, and QUINCE, JJ., concur.
WELLS, C.J., concurs with an opinion.
ANSTEAD, J., concurs specially with an opinion, in which SHAW and PARIENTE, JJ., concur.
PARIENTE, J., concurs specially with an opinion, in which ANSTEAD, J., concurs.

.See, e.g., Peede v. State, 748 So.2d 253, 255 n. 4 (Fla.1999); Jones v. State, 740 So.2d 520, 524 (Fla.1999). See also Cook v. State, 792 So.2d 1197 (Fla.2001) (Wells, C.J., concurring); Rose v. State, 787 So.2d 786, 806 (Fla.2001) (Wells, C.J., concurring); Nixon v. Singletary, 758 So.2d 618, 627 (Fla.2000) (Harding, C.J., concurring).

. We have jurisdiction. See Art. V, § 2(a), Fla. Const.

. See § 27.710, Fla. Stat. (2000) ("Registry of attorneys applying to represent persons in posteonviction capital collateral proceedings; certification of minimum requirements; appointment by trial court”).

. Ch.2000-3, § 5, at 11, Laws of Fla.

. See § 119.07(3)(b), Fla. Stat. (1999) (exempting “active criminal investigative information”); § 119.07(3)(Z), Fla. Stat. (1999) (exempting records prepared by an agency attorney exclusively for civil or criminal litigation until the conclusion of litigation); § 119.01 l(3)(d)(2), Fla. Stat. (1999) (providing that criminal investigative information is considered "active” while such information is directly related to pending prosecutions or appeals ) (emphasis added).

. See ch.2000-3, § 20, at 23, Laws of Fla. (requesting that the Court study the issue).

. See Fla. R.Crim. P. 3.850, 3.851.

.See §§ 119.07(3)(b), 119.07(3)(1 ), Fla. Stat. (2000).

. Ch.2000-3, § 8(2), at 15, Laws of Fla.

. Florida Rule of Criminal Procedure 3.850(d) provides that if the motion, files, and records conclusively show that the movant is entitled to no relief, the postconviction motion shall be denied without a hearing. See also Valle v. State, 705 So.2d 1331, 1333 (Fla.1997) (recognizing that a movant is entitled to an evidentiary hearing unless the motion and record conclusively show that the movant is entitled to no relief); Roberts v. State, 568 So.2d 1255, 1256 (Fla.1990) (stating that where the trial court denies a motion for postconviction relief without conducting an evidentiary hearing, the motion and the record must conclusively demonstrate that the defendant is entitled to no relief).

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

. See, e.g., Roberts v. State, 678 So.2d 1232 (Fla.1996) (reversing summary denial of second motion for postconviction relief and remanding for evidentiary hearing on newly discovered evidence involving recanted testimony); Swafford v. State, 679 So.2d 736 (Fla.1996) (reversing summary denial of third motion for postconviction relief and remanding for evidentiary hearing on Brady claim); Scott v. State, 657 So.2d 1129 (Fla.1995) (reversing summary denial of third motion for postcon-viction relief and remanding for evidentiaiy hearing on newly discovered Brady claims); Johnson v. Singletary, 647 So.2d 106, 111 (Fla.1994) (reversing summary denial of second motion for postconviction relief and remanding for evidentiary hearing on newly discovered evidence consisting of affidavits stating that deceased inmate had confessed to killings).

. See In re Amendment to the Florida Rules of Judicial Administration, Rule 2.050(b)(10), 688 So.2d 320 (Fla.1997).

. See In re Amendment to Florida Rules of Criminal Procedure-Rule 3.112 Minimum Standards for Attorneys in Capital Cases, 759 So.2d 610 (Fla.1999) (adopting minimum standards for conflict counsel).

.Since the current version of rule 3.851 will continue to apply to motions pending on the effective date of these amendments, both versions of the rule should be published by The Florida Bar and in West Group's Florida Rules of Court with a notation that unless otherwise indicated in the rules, the current rule applies to motions pending on the effective date of the amendments.