HARDING, J.
In Amendments to Florida Rules of Criminal Procedure S.851, 3.852, and 3.993 and Florida Rule of Judicial Administration 2.050, 797 So.2d 1213 (Fla. 2001) (July 2001 opinion), this Court adopted an amended version of Florida Rule of Criminal Procedure 3.851. We invited interested parties to submit comments on the amended rule. The Attorney General, the Capital Collateral Regional Counsel — North, Middle, and South Regions — (CCRC), and the Florida Public Defender Association filed comments. Pursuant to these comments, we adopt the following changes.
We start by addressing two suggestions made by CCRC. First, CCRC points out that the time period that the state attorney has to submit public records in rule 3.851(c)(4) conflicts with the time period in rule 3.852. Rule 3.851(c)(4), as amended in our July 2001 opinion, states in part:
Within 45 days of appointment of post-conviction counsel, the state attorney’s office that prosecuted the defendant shall provide to the postconviction counsel copies of all pretrial and trial discovery and all contents of the state’s file, except for information that the prosecuting attorney has a legal right under *300 state or federal law to withhold from disclosure.
In contrast, rule 3.852(d)(1) provides in relevant part:
Within 15 days after receiving written notification of the Supreme Court of Florida’s mandate affirming the sentence of death, the attorney general shall file with the trial court a written notice of the mandate and serve a copy of it upon the state attorney who prosecuted the case, the Department of Corrections, and the defendant’s trial counsel. The notice to the state attorney shall direct the state attorney to submit public records to the records repository within 90 days after receipt of written notification....
To alleviate this conflict, we delete the above language from rule 3.851(c)(4).
Second, CCRC claims that the time period for collateral counsel to request additional public records in rule 3.852 is unrealistic in light of the recent change concerning the appointment of collateral counsel. Rule 3.852(g)(1) states:
Within 90 days after collateral counsel is appointed, retained, or appears pro bono, such counsel shall send a written demand for additional public records to each person or agency submitting public records or identified as having information pertinent to the case under subdivision (d) of this rule.
Prior to our July 2001 changes to rule 3.851, collateral counsel was appointed within thirty days after the judgment and sentence became final.[1] See Fla. R.Crim. P. 3.851(b)(3). However, in our July 2001 opinion, we amended rule 3.851 to allow for the appointment of collateral counsel upon the issuance of the mandate affirming a judgment and sentence of death on direct appeal. See Amendments to Fla. R. of Crim. P. 3.851, 3.852, & 3.993 & Fla. R. of Jud. Admin. 2.050, at Appendix A, rule 3.851(b). Under the new appointment scheme, collateral counsel would be required to request additional public records prior to the deadline for agencies to submit initial public records to the record repository, which is within ninety days after receipt of written notification of mandate. Therefore, we amend rule 3.852(g)(1) to increase the time period that collateral counsel has for requesting additional public records from ninety days after appointment to 240 days after appointment.
We now turn to the suggestions submitted by the Attorney General. First, the Attorney General asks that rule 3.851 provide more guidance regarding the ability of CCRC to withdraw from a case after the deadline for filing a motion to withdraw has expired. The Attorney General suggests language similar to the following:
No other motion to withdraw shall be entertained after the initial time allowed in subsections (2) and (3), unless the motion to withdraw is based on a specific conflict of interest as set forth in section 27.703, Florida Statutes.
We agree that it would be helpful to provide more clarity on this issue. Hence, we adopt the suggested language and add it as section (3) under rule 3.851(b).
*301 Next, the Attorney General requests that the State be given more time to file an answer to a successive rule 3.851 motion. In our July 2001 opinion, the State was given ten days to file an answer. See Amendments to Fla. R. of Crim. P. 3.851, 8.852, & 3.993 & Fla. R. of Jud. Admin. 2.050, at Appendix A, rule 3.851(f)(3)(B). The Attorney General asks this Court to give the State twenty days to file an answer. This is a reasonable request, and rule 3.851(f)(3)(B) is amended accordingly.
Finally, the Attorney General suggests that rule 3.851(f)(5) be amended to specifically instruct the trial court to “resolve all disputes arising from the exchange of information” during the case management conference. We agree and therefore amend rule 3.851(f)(5) to reflect this change.
Accordingly, we amend Florida Rule of Criminal Procedure 3.851 as reflected in appendix A to this opinion.[2] We also amend Florida Rule of Criminal Procedure 3.852 as reflected in appendix B to this opinion. Additions to the rules are indicated by underlining; deletions are indicated by strike-through type. As stated in our July 2001 opinion, the amendments to rule 3.851, rule 3.852, and Florida Rule of Judicial Administration 2.050 shall become effective October 1, 2001, at 12:01 a.m., and shall apply to all motions filed on or after that date. Motions pending on that date are governed by the versions of rule 3.851 and 3.852 in effect immediately prior to that date. In order to avoid any confusion, this Court will issue orders appointing the appropriate CCRC office to all ca'ses where mandate has issued but counsel has not yet been appointed. We will also issue orders directing the chief judges in those circuits to assign such cases to qualified judges. For mandates issued on or after October 1, 2001, this Court will appoint counsel simultaneously with the issuance of the mandate.
As we did in our July 2001 opinion, we again emphasize that the goal of these changes is to achieve a prompt, fair, and efficient resolution of capital postconviction proceedings. Our pursuit of this goal will not end upon the implementation of the amended rules. We are hopeful that interested parties will continue to monitor the effectiveness of the amended rules and make further suggestions for improvement. Therefore, we ask interested parties to submit any further comments by October 1, 2002.[3] Comments should be submitted to the Supreme Court Committee on Postconviction Relief in Capital Cases (the Morris Committee)[4] and the Florida Bar Criminal Procedure Rules Committee[5]. Both of these committees should consider the comments and submit a report to this Court by January 1, 2003. It is so ordered.
*302 WELLS, C.J., and SHAW, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
APPENDIX A
Rule 3.851. Collateral Relief After Death Sentence Has Been Imposed And Affirmed on Direct Appeal
(a) Scope. This rule shall apply to all motions and petitions for any type of post-conviction or collateral relief brought by a prisoner in state custody who has been sentenced to death and whose conviction and death sentence have been affirmed on direct appeal. It shall apply to all post-conviction motions filed on or after October 1, 2001. Motions pending on that date are governed by the version of this rule in effect immediately prior to that date.
(b) Appointment of Postconviction Counsel.
(1) Upon the issuance of mandate affirming a judgment and sentence of death on direct appeal, the Supreme Court of Florida shall at the same time issue an order appointing the appropriate office of the Capital Collateral Regional Counsel.
(2) Within 30 days of the issuance of mandate, the Capital Collateral Regional Counsel shall file in the trial court a notice of appearance or a motion to withdraw based on a conflict of interest or some other legal ground. Motions to withdraw filed more than 30 days after the issuance of mandate shall not be entertained unless based on a specific conflict of interest as set forth in section 27.703, Florida Statutes.
(3) Within 15 days after Capital Collateral Regional Counsel files a motion to withdraw, the chief judge or assigned judge shall rule on the motion and appoint new postconviction counsel if necessary.
(c) Preliminary Procedures.
(1) Judicial Assignment. Within 30 days of the issuance of mandate affirming a judgment and sentence of death on direct appeal, the chief judge shall assign the case to a judge qualified under the Rules of Judicial Administration to conduct capital proceedings.
(2) Status Conferences. The assigned judge shall conduct a status hearing not later than 90 days after the judicial assignment, and shall hold status conferences at least every 90 days thereafter until the evidentiary hearing has been completed or the motion has been ruled on without a hearing. The attorneys, with leave of the trial court, may appear by telephone at such status conferences. Such requests shall be liberally granted. Pending motions, disputes involving public records, or any other matters ordered by the court shall be heard at the status conferences.
(3) Prisoner’s Presence Not Required. The prisoner’s presence shall not be required at any hearing or conference held under this rule, except at the evidentiary hearing on the merits of any claim and at any hearing involving conflict with or removal of collateral counsel.
(4) Duties of Defense Counsel and Prosecuting -Attorney. Within 45 days of appointment of postconviction counsel, the defendant’s trial counsel shall provide to postconviction counsel all information pertaining to the defendant’s capital case which was obtained during the representation of the defendant. Postconviction counsel shall maintain the confidentiality of all confidential information received. Within 45 days of appointment-of postcon-viction counsel, the state attorney’s- -office that proseeafed-the defendant- shall provide-to the -postconviction counsel copies- of all-pretrial and trial discovery-and all con-tenfs-of the state’s file, except for information that the prosecuting attorney has- a *303 legal right under state or federab-law to withhold-from disclosure.
(d) Time Limitation.
(1) Any motion to vacate judgment of conviction and sentence of death shall be filed by the prisoner within 1 year after the judgment and sentence become final. For the purposes of this rule, a judgment is final:
(Á) on the expiration of the time permitted to file in the United States Supreme Court a petition for writ of certiora-ri seeking review of the Supreme Court of Florida decision affirming a judgment and sentence of death (90 days after the opinion becomes final); or
(B) on the disposition of the petition for writ of certiorari by the United States Supreme Court, if filed.
(2) No motion shall be filed or considered pursuant to this rule if filed beyond the time limitation provided in subdivision (d)(1) unless it alleges that
(A) the facts on which the claim is predicated were unknown to the movant or the movant’s attorney and could not have been ascertained by the exercise of due diligence, or
(B) the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively, or
(C) postconviction counsel, through neglect, failed to file the motion.
(3) All petitions for extraordinary relief in which the Supreme Court of Florida has original jurisdiction, including petitions for writ of habeas corpus, shall be filed simultaneously with the initial brief filed on behalf of the death-sentenced prisoner in the appeal of the circuit court’s order on the initial motion for postconviction relief filed under this rule.
(4) The time limitation in subdivision (d)(1) is established with the understanding that each death-sentenced prisoner will have counsel assigned and available to begin addressing the prisoner’s postconviction issues within the time specified in this rule 30 days-after the judgment and sentence become final. Should the governor sign a death warrant before the expiration of the time limitation in subdivision (d)(1), the Supreme Court of Florida, on a defendant’s request, will grant a stay of execution to allow any postconviction relief motions to proceed in a timely and orderly manner. Furthermore, this time limitation shall not preclude the right to amend or to supplement pending pleadings under these rules.
(5) An extension of time may be granted by the Supreme Court of Florida for the filing of postconviction pleadings if the prisoner’s counsel makes a showing of good cause for counsel’s inability to file the postconviction pleadings within the 1-year period established by this rule.
(e) Contents of Motion.
(1) Initial Motion. A motion filed under this rule is an initial postconviction motion if no state court has previously ruled on a postconviction motion challenging the same judgment and sentence. An initial motion and memorandum of law filed under this rule shall not exceed 75 pages exclusive of the attachments. Attachments shall include but are not limited to the judgment and sentence. The motion shall be under oath and shall include:
(A) a statement specifying the judgment and sentence under attack and the name of the court that rendered the same;
(B) a statement of each issue raised on appeal and the disposition thereof;
*304 (C) the nature of the, relief sought;
(D) a detailed allegation of the factual basis for any claim for which an evi-dentiary hearing is sought; and
(E) a detailed allegation as to the basis for any purely legal or constitutional claim for which an evidentiary hearing is not required and the reason that this claim could not have been or was not raised on direct appeal.
The memorandum of law shall set forth the applicable case law supporting the granting of relief as to each separately pled claim. As to claims that were raised on appeal or should have or could have been raised on appeal, the memorandum shall contain a brief statement as to why these claims are being raised on postcon-viction relief.
(2) Successive Motion. A motion filed under this rule is successive if a state court has previously ruled on a postconviction motion challenging the same judgment and sentence. A successive motion shall not exceed 25 pages, exclusive of attachments, and shall include:
(A) all of the pleading requirements of an initial motion under subdivision (e)(1);
(B) the disposition of all previous claims raised in postconviction proceedings and the reason or reasons the claim or claims raised in the present motion were not raised in the former motion or motions;
(C) if based upon newly discovered evidence, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the following:
(i) the names, addresses, and telephone numbers of all witnesses supporting the claim;
(ii) a statement that the witness will be available, should an evidentiary hearing be scheduled, to testify under oath to the facts alleged in the motion or affidavit;
(iii) if evidentiary support is in the form of documents, copies of all documents shall be attached, including any affidavits obtained; and
(iv) as to any witness or document listed in the motion or attachment to the motion, a statement of the reason why the witness or document was not previously available.
(f) Procedure; Evidentiary Hearing; Disposition.
(1) Filing and Service. All pleadings in the postconviction proceeding shall be filed with the clerk of the trial court and served on the assigned judge, opposing party, and the attorney general. Upon the filing of any original court paper in the postconviction proceeding, the clerk of the trial court shall determine that the assigned judge has received a copy. All motions other than the postconviction motion itself shall be accompanied by a notice of hearing.
(2) Duty of Clerk. Upon the filing of a motion for postconviction relief, the clerk of the trial court shall immediately forward the motion and file to the assigned judge.
(3) Answer.
(A) To Initial Motion. Within 60 days of the filing of an initial motion, the state shall file its answer. The answer and accompanying memorandum of law shall not exceed 75 pages, exclusive of attachments and exhibits. The answer shall address the legal insufficiency of any claim in the motion, respond to the allegations of the motion, and address any procedural *305 bars. As to any claims of legal insufficiency or procedural bar, the state shall include a short statement of any applicable case law.
(B)To Successive Motion. Within 20 days of the filing of a successive motion, the state shall file its answer. The answer shall not exceed 25 pages, exclusive of attachments and exhibits. The answer shall specifically respond to each claim in the motion and state the reason(s) that an evidentiary hearing is or is not required.
(4) Amendments. A motion filed under this rule may be amended up to 30 days prior'to the evidentiary hearing upon motion and good cause shown. The trial court may in its discretion grant a motion to amend provided that the motion sets forth the reason the claim was not raised earlier and attaches a copy of the claim sought to be added. Granting a motion under this subdivision shall not be a basis for granting a continuance of the eviden-tiary hearing unless a manifest injustice would occur if a continuance was not granted. If amendment is allowed, the state shall file an amended answer within 20 days after the amended motion is filed.
(5) Case Management Conference; Evidentiary Hearing.
(A) Initial Postconviction Motion. No later than 90 days after the state files its answer to an initial motion, the trial court shall hold a case management conference. At the case management conference, both parties shall disclose all documentary exhibits that they intend to offer at the evidentiary hearing, provide an exhibit list of all such exhibits, and exchange a witness list with the names and addresses of any potential witnesses. All expert witnesses shall be so designated on the witness list, and copies of all expert reports shall be attached. At the case management conference, the trial court shall:
(i) schedule an evidentiary hearing, to be held within 90 days, on claims listed by the defendant as requiring a. factual determination; and
(ii) hear argument on any purely legal claims not based on disputed facts; and
(iii) resolve disputes arising from the exchange of information under this subdivision.
(B) Successive Postconviction Motion. Within 30 days after the state files its answer to a successive motion for post-conviction relief, the trial court shall hold a case management conference. At the case management conference, the trial court also shall determine whether an evidentia-ry hearing should be held and hear argument on any purely legal claims not based on disputed facts. If the motion, files, and records in the case conclusively show that the movant is entitled to no relief, the motion may be denied without an eviden-tiary hearing. If the trial court determines that an evidentiary hearing should be held, the court shall schedule the hearing to be held within 60 days. If a death warrant has been signed, the trial court shall expedite these time periods in accordance with subdivision (h) of this rule.
(C) Extension of Time to Hold Evi-dentiary Hearing. The trial court also may for good cause extend the time for holding an evidentiary hearing for up to 90 days.
(D) Procedures After Evidentiary Hearing. Immediately following an evi-dentiary hearing, the trial court shall order a transcript of the hearing which shall be filed within 30 days. Within 30 days of receipt of the transcript, the court shall render its order, ruling on each claim considered at the evidentiary hearing and all other claims raised in the motion, making detailed findings of fact and conclusions of *306 law with respect to each claim, and attaching or referencing such portions of the record as are necessary to allow for meaningful appellate review. The order issued after the evidentiary hearing shall resolve all the claims raised in the motion and shall be considered the final order for purposes of appeal. The clerk of the trial court shall promptly serve upon the parties and the attorney general a copy of the final order, with a certificate of service.
(§6) Mental Health Expert. If the defendant intends to offer expert testimony of his or her mental status, the state shall be entitled to have the defendant examined by its own mental health expert. If the defendant fails to cooperate with the state’s expert, the trial court may, in its discretion, proceed as provided in rule 3.202(e). Reports provided to either party by an expert witness shall be disclosed to opposing counsel upon receipt.
(67) Rehearing. Motions for rehearing shall be filed within 15 days of the rendition of the trial court’s order and a response thereto filed within 10 days thereafter. The trial court’s order disposing of the motion for rehearing shall be rendered not later than 15 days thereafter.
(g) Incompetence to Proceed in Capital Collateral Proceedings.
(1)A death-sentenced prisoner pursuing collateral relief under this rule who is found by the court to be mentally incompetent shall not be proceeded against if there are factual matters at issue, the development or resolution of which require the prisoner’s input. However, all collateral relief issues that involve only matters of record and claims that do not require the prisoner’s input shall proceed in collateral proceedings notwithstanding the prisoner’s incompetency.
(2) Collateral counsel may file a motion for competency determination and an accompanying certificate of counsel that the motion is made in good faith and on reasonable grounds to believe that the death-sentenced prisoner is incompetent to proceed. The motion and certificate shall replace the signed oath by the prisoner that otherwise must accompany a motion filed under this rule.
(3) If, at any stage of a postconviction proceeding, the court determines that there are reasonable grounds to believe that a death-sentenced prisoner is incompetent to proceed and that factual matters are at issue, the development or resolution of which require the prisoner’s input, a judicial determination of incompetency is required.
(4) The motion for competency examination shall be in writing and shall allege with specificity the factual matters at issue and the reason that competent consultation with the prisoner is necessary with respect to each factual matter specified. To the extent that it does not invade the lawyer-client privilege with collateral counsel, the motion shall contain a recital of the specific observations of, and conversations with, the death-sentenced prisoner that have formed the basis of the motion.
(5) If the court finds that there are reasonable grounds to believe that a death-sentenced prisoner is incompetent to proceed in a postconviction proceeding in which factual matters are at issue, the development or resolution of which require the prisoner’s input, the court shall order the prisoner examined by no more than 3, nor fewer than 2, experts before setting the matter for a hearing. The court may seek input from the death-sentenced prisoner’s counsel and the state attorney before appointment of the experts.
(6) The order appointing experts shall:
*307 (A) identify the purpose of the evaluation and specify the area of inquiry that should be addressed;
(B) specify the legal criteria to be applied; and
(C) specify the date by which the report shall be submitted and to whom it shall be submitted.
(7) Counsel for both the death-sentenced prisoner and the state may be present at the examination, which shall be conducted at a date and time convenient for all parties and the Department of Corrections.
(8) On appointment by the court, the experts shall examine the death-sentenced prisoner with respect to the issue of competence to proceed, as specified by the court in its order appointing the experts to evaluate the prisoner, and shall evaluate the prisoner as ordered.
(A) The experts first shall consider factors related to the issue of whether the death-sentenced prisoner meets the criteria for competence to proceed, that is, whether the prisoner has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the prisoner has a rational as well as factual understanding of the pending collateral proceedings.
(B) In considering the issue of competence to proceed, the experts shall consider and include in their report:
(i) the prisoner’s capacity to understand the adversary nature of the legal process and the collateral proceedings;
(ii) the prisoner’s ability to disclose to collateral counsel facts pertinent to the postconviction proceeding at issue; and
(iii) any other factors considered relevant by the experts and the court as specified in the order appointing the experts.
(C)Any written report submitted by an expert shall:
(i) identify the specific matters referred for evaluation;
(ii) describe the evaluative procedures, techniques, and tests used in the examination and the purpose or purposes for each;
(iii) state the expert’s clinical observations, findings, and opinions on each issue referred by the court for evaluation, and indicate specifically those issues, if any, on which the expert could not give an opinion; and
(iv) identify the sources of information used by the expert and present the factual basis for the expert’s clinical findings and opinions.
(9) If the experts find that the death-sentenced prisoner is incompetent to proceed, the experts shall report on any recommended treatment for the prisoner to attain competence to proceed. In considering the issues relating to treatment, the experts shall report on:
(A) the mental illness or mental retardation causing the incompetence;
(B) the treatment or treatments appropriate for the mental illness or mental retardation of the prisoner and an explanation of each of the possible treatment alternatives in order of choices; and
(C) the likelihood of the prisoner attaining competence under the treatment recommended, an assessment of the probable duration of the treatment required to restore competence, and the probability that the prisoner will attain competence to proceed in the foreseeable future.
(10) Within 30 days after the experts have completed their examinations of the death-sentenced prisoner, the court shall *308 schedule a hearing on the issue of the prisoner’s competence to proceed.
(11) If, after a hearing, the court finds the prisoner competent to proceed, or, after having found the prisoner incompetent, finds that competency has been restored, the court shall enter its order so finding and shall proceed with a postconviction motion. The prisoner shall have 60 days to amend his or her rule 3.8503.851 motion only as to those issues that the court found required factual consultation with counsel.
(12) If the court does not find the prisoner incompetent, the order shall contain:
(A) findings of fact relating to the issues of competency;
(B) copies of the reports of the examining experts; and
(C) copies of any other psychiatric, psychological, or social work reports submitted to the court relative to the mental state of the death-sentenced prisoner.
(13) If the court finds the prisoner incompetent or finds the prisoner competent subject to the continuation of appropriate treatment, the court shall follow the procedures set forth in rule 3.212(c), except that, to the extent practicable, any treatment shall take place at a custodial facility under the direct supervision of the Department of Corrections.
(h) After Death Warrant Signed.
The time periods provided for under this rule shall be expedited after a death warrant has been signed.
Court Commentary
1993 Adoption. This rule is consistent with the recommendation of the Supreme Court Committee on Postconviction Relief in Capital Cases, which was created because of the substantial delays in the death penalty postconviction relief process. The committee was created because of the inability of the capital collateral representative to properly represent all death penalty inmates in postconviction relief cases and because of the resulting substantial delays in those cases. That committee recognized that, to make the process work properly, each death row prisoner should have counsel available to represent him or her in postconviction relief proceedings. The committee found that one of the major problems with the process was that the triggering mechanism to start or assure movement of the postconviction relief proceedings was the signing of a death warrant. In a number of instances, the courts were not aware of the problems concerning representation of a defendant until a death warrant was signed. In other instances, the committee found that, when postconviction relief motions had been filed, they clearly had not moved at an orderly pace and the signing of a death warrant was being used as a means to expedite the process. The committee recommended that specific named counsel should be designated to represent each prisoner not later than 30 days after the defendant’s judgment and sentence of death becomes final. To assure that representation, the committee’s report noted that it was essential that there be adequate funding of the capital collateral representative and sought temporary assistance from The Florida Bar in providing pro bono representation for some inmates.
There is a justification for the reduction of the time period for a capital prisoner as distinguished from a noncapital prisoner, who has two years to file a posteonviction relief proceeding. A capital prisoner will have counsel immediately available to represent him or her in a posteonviction relief proceeding, while counsel is not provided or constitutionally required for noncapital *309 defendants to whom the two-year period applies.
In the event the capital collateral representative is not fully funded and available to provide proper representation for all death penalty defendants, the reduction in the time period would not be justified and would necessarily have to be repealed, and this Court will forthwith entertain a petition for the repeal of the rule. In this context, it is important to emphasize that the governor agrees that absent the circumstance where a competent death-sentenced individual voluntarily requests that a death warrant be signed, no death warrants will be issued during the initial round of federal and state review, provided that counsel for death penalty defendants is proceeding in a timely and diligent manner. This Court agrees that the initial round of postconviction proceedings should proceed in a deliberate but timely manner without the pressure of a pending death warrant. Subdivision 3.851(b)(4) above addresses concerns of The Florida Bar and The Florida Bar Foundation.
The provisions of the present rule 3.851 providing for time periods where a 60-day warrant is signed by the governor are abolished because they are unnecessary if the guidelines are followed. The proceedings and grounds for postconviction relief remain as provided under Florida Rule of Criminal Procedure 3.850, which include, as one of the grounds, the opportunity for a defendant to present newly discovered evidence in accordance with Scott v. Dugger, 604 So.2d 465 (Fla.1992), Jones v. State, 591 So.2d 911 (Fla.1991), and Richardson v. State, 546 So.2d 1037 (Fla.1989).
1996 Amendment. Subdivision (c) is added to make the Court’s decision in Huff v. State, 622 So.2d 982 (Fla.1993), applicable to all rule 3.850 motions filed by a prisoner who has been sentenced to death. Florida Rule of Judicial Administration 2.071(b) allows for telephonic and teleconferencing communication equipment to be utilized “for a motion hearing, pretrial conference, or a status conference.” Teleconferencing sites have been established by the Department of Management Services, Division of Communications at various metropolitan locations in the state. The “Shevin Study” examined, at this Court’s request, the issue of delays in capital post-conviction relief proceedings and noted that travel problems of counsel cause part of those delays. The Court strongly encourages the use of the new telephonic and teleconferencing technology for postconviction relief proceedings that do not require evidentiary hearings, such as the hearing required under subdivision (c) of this rule. Only the attorneys need be involved in a hearing held under subdivision (c) of this rule; attendance of the postconviction defendant is not required.
2001 Amendment. Several new procedures are added to rule 3.851. New subdivision (b), Appointment of Postconviction Counsel, is added to ensure appointment of postconviction counsel upon the Supreme Court of Florida’s issuance of mandate on direct appeal. New subdivision (c), Preliminary Procedures, provides for, among other things, the assignment of a qualified judge within 30 days after mandate issues on direct appeal and status conferences every 90 days after the assignment until the evidentiary hearing has been completed or the motion has been ruled on without a hearing. These status conferences are intended to provide a forum for the timely resolution of public records issues and other preliminary matters. New subdivision (f), Procedure; Evidentiary Hearing; Disposition, sets forth general procedures. Most significantly, that subdivision requires an evidentiary hearing on claims listed in an initial motion as requiring a *310 factual determination. The Court has identified the failure to hold evidentiary hearings on initial motions as a major cause of delay in the capital postconviction process and has determined that, in most cases, requiring an evidentiary hearing on initial motions presenting factually based claims will avoid this cause of delay. See Amendments to Florida Rules of Criminal Procedure 3.851, 3.852 and 3.993, 772 So.2d 488, 491 (Fla.2000).
APPENDIX B
Rule 3.852. Capital Postconviction Public Records Production
(a) Applicability and Scope.
(1) This rule is applicable only to the production of public records for capital postconviction defendants and does not change or alter the time periods specified in Florida Rules of Criminal Procedure 3.850 -and — 3.851. Furthermore, this rule does not affect, expand, or limit the production of public records for any purposes other than use in a proceeding held pursuant to rule 3.850 or rule 3.851.
(2) This rule shall not be a basis for renewing requests that have been initiated previously or for relitigating issues pertaining to production of public records upon which a court has ruled prior to October 1,1998.
(3) This rule is to be used in conjunction with the forms found at Florida Rule of Criminal Procedure 3.993.
(b) Definitions.
(1) “Public records” has the meaning set forth in section 119.011(1), Florida Statutes (1997).
(2) “Trial court” means:
(A) the judge who imposed the sentence of death; or
(B) the judge assigned by the chief judge.
(3) “Records repository” means the location designated by the secretary of state pursuant to section 119.19(2), Florida Statutes (Supp.1998), for archiving capital postconviction public records.
(4) “Collateral counsel” means a capital collateral regional counsel from one of the three regions in Florida; a private attorney who has been appointed to represent a capital defendant for postconviction litigation; or a private attorney who has been hired by the capital defendant or who has agreed to work pro bono for a capital defendant for postconviction litigation.
(5) “Agency” and “person” mean an entity or individual as defined in section 119.011(2), Florida Statutes (1997), that is subject to the requirements of producing public records for inspection under section 119.07(l)(a), Florida Statutes (1997).
(6) “Index” means a list of the public records included in each container of public records sent to the records repository.
(c)Filing and Service.
(1) The original of all notices, requests, or objections filed under this rule must be filed with the clerk of the trial court. Copies must be served on the trial court, the attorney general, the state attorney, collateral counsel, and any affected person or agency, unless otherwise required by this rule.
(2) Service shall be made pursuant to Florida Rule of Criminal Procedure 3.030(b).
(3) In all instances requiring written notification or request, the party who has the obligation of providing a notification or request shall provide proof of receipt.
(4) Persons and agencies receiving postconviction public records notifications or requests pursuant to this rule are not *311 required to furnish records filed in a trial court prior to the receipt of the notice.
(d) Action Upon Issuance of Mandate.
(1) Within 15 days after receiving written notification of the Supreme Court of Florida’s mandate affirming the sentence of death, the attorney general shall file with the trial court a written notice of the mandate and serve a copy of it upon the state attorney who prosecuted the case, the Department of Corrections, and the defendant’s trial counsel. The notice to the state attorney shall direct the state attorney to submit public records to the records repository within 90 days after receipt of written notification and to notify each law enforcement agency involved in the investigation of the capital offense to submit public records to the records repository within 90 days after receipt of written notification. The notice to the Department of Corrections shall direct the department to submit public records to the records repository within 90 days after receipt of written notification.
(2) Within 90 days after receiving written notification of issuance of the Supreme Court of Florida’s mandate affirming a death sentence, the state attorney shall provide written notification to the attorney general of the name and address of any additional person or agency that has public records pertinent to the case.
(3) Within 90 days after receiving written notification of issuance of the Supreme Court of Florida’s mandate affirming a death sentence, the defendant’s trial counsel shall provide written notification to the attorney general of the name and address of any person or agency with information pertinent to the case which has not previously been provided to collateral counsel.
(4)Within 15 days after receiving written notification of any additional person or agency pursuant to subdivision (d)(2) or (d)(3) of this rule, the attorney general shall notify all persons or agencies identified pursuant to subdivisions (d)(2) or (d)(3) that these persons or agencies are required by section 119.19(6)(b), Florida Statutes (Supp.1998), to copy, index, and deliver to the records repository all public records pertaining to the case that are in their possession. The person or agency shall bear the costs related to copying, indexing, and delivering the records.
(e) Action Upon Receipt of Notice of Mandate.
(1) Within 15 days after receipt of a written notice of the mandate from the attorney general, the state attorney shall provide written notification to each law enforcement agency involved in the specific case to submit public records to the records repository within 90 days after receipt of written notification. A copy of the notice shall be served upon the defendant’s trial counsel.
(2) Within 90 days after receipt of a written notice of the mandate from the attorney general, the state attorney shall copy, index, and deliver to the records repository all public records that were produced in the state attorney’s investigation or prosecution of the case. The state attorney shall bear the costs. The state attorney shall also provide written notification to the attorney general of compliance with this section, including certifying that, to the best of the state attorney’s knowledge or belief, all public records in the state attorney’s possession have been copied, indexed, and delivered to the records repository as required by this rule.
(3) Within 90 days after receipt of written notification of the mandate from the attorney general, the Department of Corrections shall copy, index, and deliver *312 to the records repository all public records determined by the department to be relevant to the subject matter of a proceeding under rule 3.850 or rule 3.851, unless such copying, indexing, and delivering would be unduly burdensome. The department shall bear the costs. The secretary of the department shall provide written notification to the attorney general of compliance with this section certifying that, to the best of the secretary of the department’s knowledge or belief, all such public records in the possession of the secretary of the department have been copied, indexed, and delivered to the records repository.
(4) Within 90 days after receipt of written notification of the mandate from the state attorney, a law enforcement agency shall copy, index, and deliver to the records repository all public records which were produced in the investigation or prosecution of the case. Each agency shall bear the costs. The chief law enforcement officer of each law enforcement agency shall provide written notification to the attorney general of compliance with this section including certifying that, to the best of the chief law enforcement officer’s knowledge or belief, all such public records in possession of the agency or in possession of any employee of the agency, have been copied, indexed, and delivered to the records repository.
(5) Within 90 days after receipt of written notification of the mandate from the attorney general, each additional person or agency identified pursuant to subdivision (d)(2) or (d)(3) of this rule shall copy, index, and deliver to the records repository all public records which were produced during the prosecution of the case. The person or agency shall bear the costs. The person or agency shall provide written notification to the attorney general of compliance with this subdivision and shall certify, to the best of the person or agency’s knowledge and belief, all such public records in the possession of the person or agency have been copied, indexed, and delivered to the records repository.
(f) Exempt or Confidential Public Records.
(1) Any public records delivered to the records repository pursuant to these rules that are confidential or exempt from the requirements of section 119.07(1), Florida Statutes, or article I, section 24(a), Florida Constitution, must be separately contained, without being redacted, and sealed. The outside of the container must clearly identify that the public record is confidential or exempt and that the seal may not be broken without an order of the trial court. The outside of the container must identify the nature of the public records and the legal basis for the exemption.
(2) Upon the entry of an appropriate court order, sealed containers subject to an inspection by the trial court shall be shipped to the clerk of court. The containers may be opened only for inspection by the trial court in camera. The moving party shall bear all costs associated with the transportation and inspection of such records by the trial court. The trial court shall perform the unsealing and inspection without ex parte communications and in accord with procedures for reviewing sealed documents.
(g) Upon Designation- of Collateral CounselDemand for Additional Public Records.
(1) Within @0240 days after collateral counsel is appointed, retained, or appears pro bono, such counsel shall send a written demand for additional public records to each person or agency submitting public records or identified as having information pertinent to the case under subdivision (d) *313 of this rule. However, if collateral counsel was appointed prior to October 1, 2001, then within 90 days after collateral counsel is appointed, retained, or appears pro bono, such counsel shall send a written demand for additional public records to each person or agency submitting public records or identified as having information pertinent to the case under subdivision (d) of this rule.
(2) Within 90 days of receipt of the written demand, each person or agency notified under this subdivision shall deliver to the records repository any additional public records in the possession of the person or agency that pertain to the case and shall certify to the best of the person or agency’s knowledge and belief that all additional public records have been delivered to the records repository or, if no additional public records are found, shall recertify that the public records previously delivered are complete.
(3) Within 60 days of receipt of the written demand, any person or agency may file with the trial court an objection to the written demand described in subdivision (g)(1). The trial court shall hold a hearing and issue a ruling within 30 days after the filing of any objection, ordering a person or agency to produce additional public records if the court determines each of the following exists:
(A) Collateral counsel has made a timely and diligent search as provided in this rule.
(B) Collateral counsel’s written demand identifies, with specificity, those additional public records that are not at the records repository.
(C) The additional public records sought are relevant to the subject matter of a proceeding under rule 3.850 or rule 3.851, or appear reasonably calculated to lead to the discovery of admissible evidence.
(D)The additional public records request is not overly broad or unduly burdensome.
(h) Cases in Which Mandate was Issued Prior to Effective Date of Rule.
(1) If the mandate affirming a defendant’s conviction and sentence of death was issued prior to October 1,1998, and no initial public records requests have been made by collateral counsel by that date, the attorney general and the state attorney shall file notifications with the trial court as required by subdivisions (d) and (e) of this rule.
(2) If on October 1, 1998, a defendant is represented by collateral counsel and has initiated the public records process, collateral counsel shall, within 90 days after October 1,1998, or within 90 days after the production of records which were requested prior to October 1, 1998, whichever is later, file with the trial court and serve a written demand for any additional public records that have not previously been the subject of a request for public records. The request for these records shall be treated the same as a request pursuant to subdivisions (d)(3) and (d)(4) of this rule, and the records shall be copied, indexed, and delivered to the repository as required in subdivision (e)(5) of this rule.
(3) Within 10 days of the signing of a defendant’s death warrant, collateral counsel may request in writing the production of public records from a person or agency from which collateral counsel has previously requested public records. A person or agency shall copy, index, and deliver to the repository any public record:
(A) that was not previously the subject of an objection;
(B) that was received or produced since the previous request; or "
*314 (C) that was, for any reason, not produced previously.
The person or agency providing the records shall bear the costs of copying, indexing, and delivering such records. If none of these circumstances exist, the person or agency shall file with the trial court and the parties an affidavit stating that no other records exist and that all public records have been produced previously. A person or agency shall comply with this subdivision within 10 days from the date of the written request or such shorter time period as is ordered by the court.
(4) In all instances in subdivision (h) which require written notification the receiving party shall provide proof of receipt by return mail or other carrier.
(i)Limitation on Postproduction Request for Additional Records.
(1) In order to obtain public records in addition to those provided under subdivisions (e), (f), (g), and (h) of this rule, collateral counsel shall file an affidavit in the trial court which:
(A) attests that collateral counsel has made a timely and diligent search of the records repository; and
(B) identifies with specificity those public records not at the records repository; and
(C) establishes that the additional public records are either relevant to the subject matter of the postconviction proceeding or are reasonably calculated to lead to the discovery of admissible evidence; and
(D) shall be served in accord with subdivision (c)(1) of this rule.
(2) Within 30 days after the affidavit of collateral counsel is filed, the trial court shall ordef a person or agency to produce additional public records only upon finding each of the following:
(A) collateral counsel has made a timely and diligent search of the records repository;
(B) collateral counsel’s affidavit identifies with specificity those additional public records that are not at the records repository;
(C) the additional public records sought are either relevant to the subject matter of a proceeding under rule SrgSQ-or rule 3.851 or appear reasonably calculated to lead to the discovery of admissible evidence; and
(D) the additional records request is not overly broad or unduly burdensome.
(j) Copying of Public Records. Collateral counsel shall provide the personnel, supplies, and any necessary equipment to copy records held at the records repository.
(k) Authority of the Court. In proceedings under this rule the trial court may:
(1) compel or deny disclosure of records;
(2) conduct an in-camera inspection;
(3) extend the times in this rule upon a showing of good cause;
(4) impose sanctions upon any party, person, or agency affected by this rule including initiating contempt proceedings, taxing expenses, extending time, ordering facts to be established, and granting other relief; and
(5) resolve any dispute arising under this rule unless jurisdiction is in an appellate court.
(l) Scope of Production and Resolution of Production Issues.
(1) Unless otherwise limited, the scope of production under any part of this *315 rule shall be that the public records sought are not privileged or immune from production and are either relevant to the subject matter of the proceeding under rule 3.850 or rule 3.851 or are reasonably calculated to lead to the discovery of admissible evidence.
(2) Any objections or motions to compel production of public records pursuant to this rule shall be filed within 30 days after the end of the production time period provided by this rule. Counsel for the party objecting or moving to compel shall file a copy of the objection or motion directly with the trial court. The trial court shall hold a hearing on the objection or motion on an expedited basis.
(3) The trial court may order mediation for any controversy as to public records production pursuant to this rule in accord with Florida Rules of Civil Procedure 1.700, 1.710, 1.720, 1.730, or the trial court may refer any such controversy to a master in accord with Florida Rule of Civil Procedure 1.490.
(m) Destruction of Records Repository Records. Sixty days after a capital sentence is carried out, after a defendant is released from incarceration following the granting of a pardon or reversal of the sentence, or after a defendant has been resentenced to a term of years, the attorney general shall provide written notification of this occurrence to the secretary of state with service in accord with subdivision (c)(1). After the expiration of the 60 days, the secretary of state may then destroy the copies of the records held by the records repository that pertain to that case, unless an objection to the destruction is filed in the trial court and served upon the secretary of state and in accord with subdivision (c)(1). If no objection has been served within the 60 day period, the records may then be destroyed. If an objection is served, the records shall not be destroyed until a final disposition of the objection.

. In the previous version of rule 3.851, we explained that for the purposes of rule 3.851, a judgment is final:
(A) on the expiration of the time permitted to file in the United States Supreme Court a petition for writ of certiorari seeking review of the Supreme Court of Florida decision affirming a judgment and sentence of death (90 days after the opinion becomes final); or
(B) on the disposition of the petition for writ of certiorari by the United States Supreme Court, if filed.
Fla. R.Crim. P. 3.851(b)(1).

.Since the current version of rule 3.851 will continue to apply to motions pending on the effective date of these amendments, both versions of the rule should be published by The Florida Bar and in West Group's Florida Rules of Court with a notation that unless otherwise indicated in the rules, the current rule applies to motions pending on the effective date of the amendments.
Appendix A only reflects changes that have been made to the July 12, 2001, version of rule 3.851. On October 1, 2001, all of the changes reflected in this opinion and the July 12, 2001, opinion will go into effect.

. This will allow ample lime for interested parties to observe the impact of the amended rules.

. The Honorable Stan R. Morris Chair, Supreme Court Committee on Postconviction Relief in Capital Cases, Alachua County Courthouse, 201 East University Avenue, Gainesville, Florida 32601.

. Raymond J. Rafool, II, Chair, Criminal Procedure Rules Committee, Post Office Box 7286, Winter Haven, Florida 33883-7286.