827 So.2d 948 (2002)
Tracy McLIN, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-829.
Supreme Court of Florida.
September 12, 2002.
*950 Charles G. White, Miami, FL, for Petitioner.
Robert A. Butterworth, Attorney General, and Fredericka Sands, Assistant Attorney General, Miami, FL, for Respondent.
PARIENTE, J.
We have for review McLin v. State, 781 So.2d 475 (Fla. 3d DCA 2001), an opinion of the Third District Court of Appeal that expressly and directly conflicts with the decisions of the Fourth District Court of Appeal in Robinson v. State, 736 So.2d 93, 93 (Fla. 4th DCA 1999), the First District Court of Appeal in Murrah v. State, 773 So.2d 622, 623 (Fla. 1st DCA 2000), and the Second District Court of Appeal in Lewis v. State, 725 So.2d 1186, 1187 (Fla. 2d DCA 1998), on the issue of the appellate standard of review of a trial court's summary denial of a rule 3.850 motion when the movant alleges newly discovered evidence based upon recanted testimony of a witness. The Third District's opinion also misapplies this Court's decisions in Foster v. State, 810 So.2d 910, 914 (Fla.2002), and Jones v. State, 591 So.2d 911, 916 (Fla. 1992), as to the standard of appellate review of a trial court's summary denial of a rule 3.850 motion. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons that follow, we quash the Third District's decision in this case, and remand for an evidentiary hearing consistent with this opinion.

BACKGROUND
The Third District Court of Appeal described the underlying facts of the case as follows:
McLin was charged with [the] first-degree murder and armed robbery [of Pierre Mereus]. Several witnesses testified against him at his trial. Oliver Menzies, the state's main witness, testified that on the night in question, he and Jose Saldana were passengers in a car driven by McLin and were on their way to a night club when McLin spotted a man leaving his car and walking towards his residence. According to Menzies, McLin made a sudden u-turn in front of the residence, got out of the car, shot the man and took his wallet. Menzies claimed that he and Saldana stayed in the car the entire time. Saldana did not testify at the trial. Nadine Sylvester, McLin's girlfriend, testified that McLin admitted to being the shooter while they were watching a television news account of the murder. Ms. Sylvester notified police and told them that McLin kept a picture of a 9mm gun (the kind used in the murder) in a bible he had in his living room. That photograph was found and made part of the evidence against McLin at trial.
A police officer testified that approximately two weeks after the murder, the police stopped a car driven by Menzies in which McLin was a passenger. The police noticed a semi-automatic weapon between the seats while reviewing Menzies' driver's license. As the officer attempted to arrest Menzies, he struggled and ran away. McLin was released from the scene. A search of the car revealed a second gun, both of which had been reported stolen. One of the *951 guns found was the murder weapon used in this case.
Subsequent to receiving the information from Ms. Sylvester, police visited McLin's home with a search warrant. They recovered from the bible, the photo of a gun that resembled the murder weapon.
McLin, 781 So.2d at 475-76. Based on this evidence, McLin was convicted of first-degree murder and armed robbery, and was sentenced to life imprisonment. His conviction and sentence were affirmed on direct appeal to the Third District in a per curiam affirmance. See McLin v. State, 685 So.2d 11 (Fla. 3d DCA 1996).
Although the Third District's opinion characterized Sylvester as "McLin's girlfriend," McLin, 781 So.2d at 476, a review of the record reveals that Sylvester testified at trial that she was the mother of Menzies' children, and had been living with Menzies for almost ten years. She also testified that the reason why she became close with McLin is because McLin told her that he would help get Menzies, who was in jail for a different crime, out of jail. Sylvester further testified that she never had a sexual relationship with McLin. Thus, the two main witnesses against McLin were Menzies and Sylvester, Menzies' longtime girlfriend. Additionally, there was no physical evidence to implicate McLin.
McLin filed a rule 3.850 motion for postconviction relief,[1] in support of which McLin offered as new evidence the affidavit of Jose Saldana[2] dated May 3, 1996. See id. at 476. This affidavit stated:
1. I am currently in the custody of the Florida Department of Corrections following my conviction in an armed robbery case prosecuted in the Circuit Court for the Eleventh Judicial Circuit in Dade County, Florida, under Case No. F94-011979.
2. I was also prosecuted as an accessory after the fact to the murder of Pierre Mereus. I was also prosecuted in this case in the Circuit Court for the Eleventh Judicial Circuit in Dade County, Florida, under Case No. F94-037174. Tracey McLin was prosecuted for the murder of Pierre Mereus in the same circuit under Case No. F94-11236.
3. Oliver Menzies, a/k/a Junior, was also prosecuted as an accessory after the fact to the murder of Pierre Mereus. He was charged in the Circuit Court for the Eleventh Judicial Circuit in Dade County, Florida.
4. I was an eye-witness to the murder of Pierre Mereus. He was shot and killed by Oliver Menzies, a/k/a Junior, on January 25, 1994. Tracy McLin was not present at the killing.

5. At that time, Mr. Menzies had a gun which he used to commit robberies. Mr. Menzies was the second person who participated in the robbery/shooting of the corrections officer in the case for which I was convicted. That incident *952 took place on January 24, 1994, and the same gun that was used in that shooting was used the following evening by Mr. Menzies to murder Pierre Mereus.

6. On both evenings, we were using a white Acura that Mr. Menzies said was his.
7. Mr. Menzies caused threats to be conveyed to me if I should implicate him in the murder. He conveyed to me that it would be in our interests to falsely accuse Tracy McLin and insist that our role was limited to being innocent bystanders.

8. I am coming forward to expose this scheme at this time because Mr. Menzies broke our agreement, and I can no longer stand idly by and watch an innocent man go to prison for life. As for the agreement, Mr. Menzies was supposed to tell the police what would get both of us out of jail, not just him. I feel that he used and betrayed me.
9. I am making this statement of my own free will and because it is the truth. I have not been offered any inducement, monetary or otherwise, from Tracy McLin or anyone else on his behalf. I know that I have previously given a sworn statement in which I accused Tracy McLin of shooting Pierre Mereus while Mr. Menzies and I watched from our automobile. I understand that I could be prosecuted for having made a false statement to the police, and that I have not been offered any immunity or leniency in any subsequent prosecution by the State.
(Emphasis supplied.)
The State responded to this affidavit by attaching to its response to McLin's rule 3.850 motion a letter allegedly written by McLin to Saldana. The State alleged that this letter was given to the police by Saldana in 1995 before Saldana submitted the affidavit. The State also attached a police report of a latent fingerprint evaluation indicating that McLin's and Saldana's fingerprints were on the letter. However, no evidentiary hearing was held, and neither the letter nor the report was ever admitted as evidence in the trial court.
The several-page letter contained the following statements attributed to McLin: (1) Saldana could "help [McLin] without hurting [Saldana] or anyone else in the case"; (2) Saldana should tell McLin's attorney that Saldana "was going to tell the truth" if called at trial; (3) Saldana could not be charged with perjury because Saldana did not testify at trial, and Menzies was protected by double jeopardy because he was already convicted of a lesser charge; (4) Saldana should tell McLin's attorney that McLin was never in the car, that Menzies was the one who shot the victim, and that while Menzies was in prison, Menzies sent his own girlfriend to Saldana's house to tell Saldana what to say about the murder.
The trial court summarily denied all but one issue raised in McLin's rule 3.850 motion. See McLin, 781 So.2d at 476. The only issue for which the trial court granted an evidentiary hearing was McLin's argument that defense counsel was ineffective for urging McLin to testify to establish as his only defense that he was a rich drug dealer who did not need to rob anyone. The trial court denied relief on this claim after the evidentiary hearing, and on appeal the Third District affirmed all of the trial court's rulings.

SUMMARY DENIAL OF NEWLY DISCOVERED EVIDENCE CLAIM
The first issue in this case is whether the Third District erred in affirming the trial court's summary denial of McLin's rule 3.850 motion alleging newly discovered evidence and incorporating an affidavit of an eyewitness to the murder stating *953 that McLin did not commit the crime for which McLin was convicted. The trial court's order summarily denying relief on this claim states:
The Defendant's final basis for this motion is that there exists newly discovered evidence that Jose Saldana lied in his deposition about the Defendant's involvement in the murder because Menzies threatened him. In order for evidence to qualify as newly discovered, the "asserted facts must have been unknown by the trial court, by the party, or by counsel by the time of trial, and it must appear that the defendant or his counsel could not have known them by the use of diligence." Hallman v. State, 371 So.2d 482 (Fla.1979). Further, the evidence "must be of such nature that it would probably produce an acquittal on retrial." Jones v. State, 591 So.2d 911 (Fla. 1991). Even if Saldana had testified consistent with the Defendant's claim, it would not be likely to have caused the Defendant to be acquitted. Moreover, Saldana's testimony is probably untruthful as the Defendant implored Saldana to change his testimony in a letter the Defendant sent to Saldana while in custody. Since it is unlikely that Saldana's new testimony would produce an acquittal upon retrial, such testimony does not qualify as newly discovered evidence.
(Emphasis supplied.) In other words, without an evidentiary hearing the trial court determined that the affidavit was probably untruthful based solely on the contents of the letter allegedly written by McLin. Further, the trial court summarily concluded, without a stated rationale or record attachments, that even if Saldana testified consistently with McLin's claim "it would not be likely to have caused the Defendant to be acquitted."
On appeal of this issue, the Third District stated:

As his first argument on appeal, McLin contends that he was entitled to have Saldana personally testify at the evidentiary hearing below in order for the trial court to make its credibility determination. We disagree. First of all, the trial court correctly recognized that in order for evidence to qualify as newly discovered, "[the asserted] facts... must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or his counsel could not have known them by the use of diligence." See Hallman v. State, 371 So.2d 482 (Fla.1979). Moreover, where there is conflicting evidence of a defendant's guilt, the trial court must evaluate the weight of the newly discovered evidence against the evidence adduced at trial to determine whether the new evidence would probably have resulted in an acquittal. See Jones v. State, 591 So.2d 911 (Fla.1991); Kendrick v. State, 708 So.2d 1011 (Fla. 4th DCA 1998). Thus, the trial court was required to determine whether the averments of Saldana's affidavit were sufficient to create a probability of McLin's acquittal, notwithstanding all of the other evidence adduced at trial against McLin.

Here, after reviewing Saldana's affidavit, the trial court concluded that it did not qualify as newly discovered evidence because it would not likely have changed the outcome of the trial given the other evidence adduced at trial. The court added, that in all likelihood, the affidavit was untruthful considering McLin's earlier letter to Saldana. We find no error in this determination and hence find no merit to McLin's first point on appeal.
McLin, 781 So.2d at 476-77 (emphasis supplied).
*954 We begin with the legal principles governing when a trial court may properly deny a motion for postconviction relief without an evidentiary hearing. This Court has explained that "[t]o support summary denial without a hearing, a trial court must either state its rationale in its decision or attach those specific parts of the record that refute each claim presented in the motion." Anderson v. State, 627 So.2d 1170, 1171 (Fla.1993). This requirement is embodied in Florida Rule of Criminal Procedure 3.850(d), which permits summary denial only if the "motion, files and records in the case conclusively show that the movant is entitled to no relief." Further, the rule requires that "when the denial is not predicated on the legal insufficiency of the motion on its face, a copy of that portion of the files and records should be attached to the order." Fla. R.Crim. P. 3.850(d).[3]
This Court also has enunciated the proper standard of appellate review when an appellate court reviews a summary denial of a rule 3.850 claim, including a claim of newly discovered evidence:
To uphold the trial court's summary denial of claims raised in a 3.850 motion, the claims must be either facially invalid or conclusively refuted by the record. Further, where no evidentiary hearing is held below, we must accept the defendant's factual allegations to the extent they are not refuted by the record.
Foster v. State, 810 So.2d 910, 914 (Fla. 2002) (quoting Peede v. State, 748 So.2d 253, 257 (Fla.1999)). This requirement is embodied in Florida Rule of Appellate Procedure 9.141(b)(2)(D), which governs appeals of summary denials of motions for postconviction relief in non-death cases, and states that "[o]n appeal from the denial of relief, unless the record shows conclusively that the appellant is entitled to no relief, the order shall be reversed and the cause remanded for an evidentiary hearing or other appropriate relief."[4]
The legal sufficiency of the allegations is not in dispute in this case. Thus, in determining first whether the trial court erred when it summarily denied McLin's motion, and second whether the appellate court erred in affirming that denial, the sole focus of legal inquiry was whether the files and records conclusively refuted the allegations of the motion and the attached affidavit. See Foster, 810 So.2d at 914; Anderson, 627 So.2d at 1171.
*955 In Robinson, a similar case involving a newly discovered evidence claim where an affidavit was attached from a State's witness recanting his former testimony, the Fourth District reversed a trial court's summary denial and remanded for an evidentiary hearing. See 736 So.2d at 93. The Fourth District explained:
Florida law treats recantations with suspicion, and requires a new trial only if the court is satisfied that the recantation is true and that "the witness's testimony will change to such an extent as to render probable a different verdict." Armstrong v. State, 642 So.2d 730, 735 (Fla. 1994).
An evidentiary hearing is usually required to make that determination. See e.g., Hilbert v. State, 666 So.2d 1059, 1059 (Fla. 5th DCA 1996); Venuto v. State, 615 So.2d 255, 256 (Fla. 3d DCA 1993).
Id. (emphasis supplied). This statement by the Fourth District also comports with a statement by the First District, which has correctly observed that "summary denial is rarely appropriate if the trial court needs to assess the credibility of the new testimony." Murrah, 773 So.2d at 623.
Likewise, in Lewis, the Second District stated that "[i]n determining whether a new trial should be granted based on recanted testimony, the trial court must first determine if the recanting witness is testifying truthfully in the recantation." 725 So.2d at 1187. Thus, in Lewis the Second District held that the trial court erred in refusing to allow the testimony of the recanting witness because "there was no opportunity for the trial court to evaluate the witness's demeanor." Id. Similarly, in Robinson, the Fourth District concluded:
In this case, the trial court denied relief after reviewing the entire trial record and Sliwa's affidavit, but without hearing any evidence. After conducting the same review, we cannot conclude that Sliwa's affidavit was inherently incredible or that his trial testimony was obviously immaterial to the verdict, so as to allow the trial court to reject his recantation without holding an evidentiary hearing.

736 So.2d at 93 (emphasis supplied).
We agree with the analysis in Robinson, which correctly applied our precedent as well as Florida Rule of Appellate Procedure 9.141(b)(2)(D), mandating an evidentiary hearing unless the allegations are conclusively refuted by the record. In this case, because there was no evidentiary hearing to determine the truthfulness of Saldana's statements, the standard of review set forth by this Court in Foster and Peede required both the trial court and the Third District to accept the allegations of Saldana's affidavit as true. Instead, the trial court made a credibility determination that Saldana's affidavit was "probably untruthful" based solely on the letter and the fingerprint report attached to the State's response, and the Third District affirmed the trial court's determination. This basis for summary denial is in conflict with the standard that an evidentiary hearing is required unless the allegations are "conclusively refuted." Foster, 810 So.2d at 914. The letter itself does not conclusively refute the affidavit. Further, because no evidentiary hearing was held and thus Saldana never testified, there was never an opportunity to question Saldana about whether his recantation was truthful, or merely a product of McLin's direction as to what to state.
As the Fourth District pointed out, there may be cases where, from the face of the affidavit, it can be determined that the affidavit is "inherently incredible." Robinson, 736 So.2d at 93. However, in this case the affidavit itself is not inherently incredible. Thus, because the trial court based its credibility determination upon *956 the letter, but the letter does not conclusively refute the allegations in Saldana's affidavit, the trial court erred when it summarily denied McLin's motion for a new trial based on newly discovered evidence. See Anderson, 627 So.2d at 1171. Because the Third District affirmed the trial court's summary denial on this record, the Third District misapplied this Court's precedent as to the standard of review of a summary denial of a newly discovered evidence claim, which requires that "[t]o uphold the trial court's summary denial of claims raised in a rule 3.850 motion, the claims must be either facially invalid or conclusively refuted by the record." Foster, 810 So.2d at 914. Accordingly, on the basis of the allegations of McLin's motion in this case, an evidentiary hearing was required in order to resolve the credibility determination as to the truthfulness of Saldana's affidavit, at which time Saldana could be cross-examined about the letter and the truthfulness of his recanted testimony.
The Third District also misapplied this Court's precedent and Florida Rule of Criminal Procedure 9.141(b)(2)(D), mandating an evidentiary hearing unless the allegations are conclusively refuted by the record, when it affirmed the trial court's alternative conclusory determination on McLin's newly discovered evidence claim that "[e]ven if Saldana had testified consistent with the Defendant's claim, it would not be likely to have caused the Defendant to be acquitted." In Jones, this Court articulated a two-step inquiry for determining whether a defendant is entitled to relief for newly discovered evidence. See 591 So.2d at 915-16. First, the facts must have been unknown at the time of trial and be such that they could not have been known by the exercise of due diligence. See id. at 916. The second prong, which this Court referred to as the "probability standard," see id., requires that "in order to provide relief, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." Id. at 915.
Although correctly enunciating the legal standard applicable to the second prong of the newly discovered evidence claim under Jones, neither the trial court's order nor the Third District's opinion sets forth how this determination could be reached without an evidentiary hearing. As the Fourth District has correctly pointed out, there may be cases where the newly discovered evidence is "obviously immaterial" to the verdict. Robinson, 736 So.2d at 93. However, ordinarily an evidentiary hearing is required for the trial court to properly determine, in accordance with Jones, whether the newly discovered evidence is of "such nature that it would probably produce an acquittal on retrial." Jones, 591 So.2d at 915. In making this determination, "the judge will necessarily have to evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial," so that the appellate court can "fully evaluate the quality of the evidence which demonstrably meets the definition of newly discovered evidence." Id. at 916 (emphasis supplied).
In this case, taking the affidavit as true, as the trial court and the Third District were required to do for the purpose of determining whether a summary denial was proper, Saldana's affidavit alleges that Menzies, who was the main witness against McLin, was in fact the shooter and that McLin was not even present at the time of the shooting. Saldana further states that Menzies and Saldana had agreed to lie to implicate McLin. Although the Third District's opinion refers to the testimony from Sylvester that implicates McLin and characterizes Sylvester as McLin's girlfriend, the record also reveals that Sylvester is the mother of Menzies' children and that she was the live-in lover of Menzies for ten *957 years. Furthermore, not only was there no physical evidence linking McLin to the scene, but also the murder weapon was discovered in a car in which Menzies was the driver and McLin was merely the passenger. When stopped by the police, it was not McLin but Menzies who fled the scene before he could be arrested.
The trial court failed to evaluate any of this evidence in its order so that the Third District could "fully evaluate the quality of the evidence which demonstrably [met] the definition of newly discovered evidence." Id. Because the Third District affirmed the trial court's summary denial, the Third District misapplied this Court's precedent as to the standard of review of a summary denial of a newly discovered evidence claim, which requires that "[t]o uphold the trial court's summary denial of claims raised in a rule 3.850 motion, the claims must be either facially invalid or conclusively refuted by the record." Foster, 810 So.2d at 914. Accordingly, because Saldana's affidavit was not conclusively refuted by the record as to the second prong of Jones, summary denial was improper on that basis as well.[5]

SUMMARY DENIAL OF REVERSE WILLIAMS RULE CLAIM
We next review the Third District's affirmance of the trial court's summary denial of McLin's ineffective assistance claim based upon counsel's failure to present reverse Williams[6] rule evidence.[7] In summarily denying this claim, the trial court stated:
The Defendant's first claim is that his trial counsel was defective for abandoning reverse Williams rule evidence. The defense intended to introduce evidence that the night before the murder, two men[8] in a white Acura had used the same gun to rob and shoot a corrections officer as reverse Williams rule evidence. Prior to trial, however, the State was successful in excluding this evidence. However, sometime during the trial the State withdrew its objection to this evidence. Despite the withdrawal of the objection, the defense attorney never pursued this avenue in his representation of the Defendant. The defense attorney stated on the record that it would be difficult to put that back in the case as he had tailored his opening statement and cross-examinations to exclude the evidence. (Trial Transcript at 419-421See Attachment 1). The defense attorney went on to say that if he decided to use such evidence he would inform the court how he intended to do so prior to doing so. The fact that the defense did not pursue the reverse Williams rule evidence does not satisfy the prejudice prong of Strickland v. Washington, as there is no "reasonable probability" that the result would have been different in light of all the other evidence against the Defendant.

*958 (Emphasis supplied.) Thus, the trial court summarily denied this claim based on the prejudice prong of the ineffective assistance of counsel claim.
On appeal of this issue, the Third District affirmed the trial court's denial of postconviction relief on this issue, stating:
Similarly, we find no merit to McLin's argument that the trial court erred in finding that he had not sustained his burden under Strickland v. Washington, 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (1984) to establish the ineffectiveness of his trial counsel. The trial court found that McLin did not demonstrate that the absence of any of the claimed deficiencies of his trial counsel, even if valid, would have somehow altered the outcome of this trial.

McLin, 781 So.2d at 477 (emphasis supplied).
McLin argues that the Third District erred in affirming the trial court's denial of McLin's ineffective assistance claims.[9] The two prongs of an ineffective assistance of counsel claim are deficiency of counsel and prejudice. See Rutherford v. State, 727 So.2d 216, 219 (Fla.1998) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "[B]oth the performance and prejudice prongs are mixed questions of law and fact, with deference to be given only to the lower court's factual findings." Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999).
As to the second prong, we have explained that counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Rutherford, 727 So.2d at 219 (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). In elaborating on this second prong, we explained that the reasonable probability standard is "a probability sufficient to undermine confidence in the outcome." Id. at 220 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
The sole basis for the Third District's affirmance of the summary denial was the prejudice prong of the ineffective assistance of counsel claim. However, because we conclude that on this record the prejudice prong is not conclusively refuted, a reversal as to that issue was required as well. See Foster, 810 So.2d at 914; Stephens, 748 So.2d at 1033.
Additionally, the Third District also applied an incorrect standard regarding the prejudice prong of Strickland when it stated, in affirming the trial court, that McLin did not demonstrate that any of the claimed deficiencies, "even if valid, would have somehow altered the outcome of the trial." McLin, 781 So.2d at 477. By stating an incorrect, outcome-determinative test for the second prong of an ineffective assistance of counsel claim, the Third District's opinion conflicts with Rutherford and its progeny, which are all based on the actual language of Strickland.
*959 Moreover, in this case the evaluation of the newly discovered evidence claim will be intertwined with this ineffective assistance of counsel claim because, if Saldana testifies consistently with his affidavit and the testimony is determined to be credible, the reverse Williams rule evidence would establish that it was Menzies and Saldana who the night before the murder in question used the murder weapon to commit a robbery. A cumulative analysis would thus be necessary on remand in evaluating the prejudice prong of the ineffective assistance of counsel claim. See Cherry v. State, 659 So.2d 1069, 1074 (Fla.1995) (remanding for an evidentiary hearing based upon the cumulative effect of several ineffective assistance of counsel claims); Harvey v. Dugger, 656 So.2d 1253, 1257 (Fla. 1995) (same); cf. Rogers v. State, 782 So.2d 373, 385 (Fla.2001) (holding that in reviewing the impact that withheld materials under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), might have on defendants, courts must assess the cumulative effect of the evidence).
Therefore, we quash the Third District's decision and remand for proceedings consistent with this opinion.
It is so ordered.
ANSTEAD, C.J., SHAW and QUINCE, JJ., and HARDING, Senior Justice, concur.
LEWIS, J., concurs in result only. WELLS, J., dissents.
NOTES
[1] McLin raised the following claims: (1) ineffective assistance of counsel for (a) failing to present reverse Williams rule evidence of certain crimes or wrongful acts committed by other persons, (b) urging McLin to testify to establish his only defense, which was that he was a rich drug dealer who did not need to rob anyone, (c) failing to preserve the record for appeal by not objecting to the testimony of Menzies' attorney, who vouched for his client's credibility, and (d) failing to preserve the record for appeal by not objecting to the rule of sequestration when the lead detective was allowed to sit through the entire trial and then testified to impeach McLin; and (2) newly discovered evidence that Saldana lied about McLin's involvement in the murder for which McLin was convicted.
[2] Although Saldana did not testify at trial, he was deposed pretrial, and testified in his deposition consistent with Menzies' trial testimony.
[3] This is in contrast to recently amended rule 3.851, governing postconviction motions filed after a death sentence has been imposed and affirmed on direct appeal. Rule 3.851, as amended by Amendments to Florida Rules of Criminal Procedure 3.851, 3.852, & 3.993, 802 So.2d 298 (Fla.2001), now mandates an evidentiary hearing "on claims listed by the defendant as requiring a factual determination." Fla. R.Crim. P. 3.851(f)(5)(A)(i). Prior to this amendment, the language in Anderson, 627 So.2d at 1171, and Florida Rule of Criminal Procedure 3.850(d) applied to the summary denial of postconviction motions in both death and non-death cases.
[4] This is in contrast to our standard of review following a denial of a 3.850 claim following an evidentiary hearing where the appellate court affords deference to the trial court's factual findings. See Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997) (setting forth standard of appellate review following evidentiary hearing on motion based on newly discovered evidence claim that "[a]s long as the trial court's findings are supported by competent substantial evidence, this Court will not `substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court'"). Cf. Stephens v. State, 748 So.2d 1028, 1033-34 (Fla.2000) (setting forth standard of appellate review following an evidentiary hearing on motion based on ineffective assistance of counsel claims that affords deference to findings of fact based on competent substantial evidence and independently reviews deficiency and prejudice as mixed questions of law and fact).
[5] This analysis is consistent with our recent opinion in Ford v. State, 825 So.2d 358(Fla.2002), where we held that "the Fifth District erred in resolving as a matter of law the factual issue of whether counsel's actions were tactical."
[6] See Williams v. State, 110 So.2d 654 (Fla. 1959).
[7] Reverse Williams rule evidence permits the defendant to introduce evidence of prior similar crimes involving another person, if a proper predicate is laid, to show the defendant's innocence by proof of the guilt of another. See Rivera v. State, 561 So.2d 536, 539 (Fla. 1990).
[8] Saldana alleges in his affidavit that the "two men" are Menzies and Saldana. Thus, the reverse Williams rule evidence could have provided the additional evidence to the jury that on the night before the murder, Menzies used the murder weapon involved in the present case in a previous robbery and shooting.
[9] McLin argues only two of the four grounds of ineffective assistance that he originally raised in the trial court. First, McLin argues that the Third District erred in affirming the trial court's denial after an evidentiary hearing of his claim that defense counsel was ineffective for urging the defendant to testify to establish as his only defense that he was a rich drug dealer who did not need to rob anyone. Second, McLin argues that the Third District erred in affirming the trial court's summary denial of his claim that defense counsel was ineffective for abandoning reverse Williams rule evidence. We address in this opinion only the summary denial of the reverse Williams rule ineffective assistance of counsel claim. However, because we quash and remand, it may be necessary for the trial court to reevaluate the merits of the ineffective assistance of counsel claim as to the rich drug dealer defense when conducting a cumulative analysis.