860 So.2d 1007 (2003)
Jay Vernon MOSS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-1566.
District Court of Appeal of Florida, Fifth District.
November 21, 2003.
Rehearing Denied December 19, 2003.
*1008 Jay Vernon Moss, Lowell, pro se.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Wesley Heidt, Assistant Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
Moss appeals from the summary denial of his motion filed pursuant to Florida Rule of Procedure 3.850. He seeks to challenge his convictions and sentences in 1985 for kidnapping, two counts of armed robbery, and first degree murder.[1]
In this motion, Moss alleges a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and/or a newly discovered evidence claim, based on the state's failure to disclose reports of an internal FBI investigation and an investigation of the Office of Inspector General (OIG) of the United States Department of Justice, which found that the FBI Crime Laboratory in Washington D.C. used shoddy practices, and that some of its agents had testified falsely, committed errors in testing and issued flawed scientific reports. Three FBI agents from the FBI Crime Laboratory, Michael Malone, William McInnis and Robert Hallet, who worked at the Laboratory at the time involved in the investigation, testified for the state in Moss' case. We conclude Moss is entitled to either an evidentiary hearing or a more comprehensive consideration of the entire record by the trial court.
The OIG report was published on April 15, 1997. It was the result of an eighteen-month *1009 investigation into allegations of wrongdoings and improprieties within three units of the FBI Laboratory: the Explosives Unit, the Materials Unit and the Chemistry-Toxicology Unit. The report was highly critical of the laboratory and the agents working there. The FBI also conducted an independent investigation with similar conclusions. See Trepal v. State, 846 So.2d 405 (Fla.2003); Davis v. State, 736 So.2d 1156 (Fla.1999).
Moss alleged that the OIG and FBI reports were disclosed to the State Attorney who prosecuted his case on December 22, 1997, but he directed that the reports not be shared with Moss. Moss claims he only discovered the existence of the reports when his case was referenced in articles appearing in the St. Petersburg Times, on March 4 and 5 of 2001.
Moss argues that all of the testimony given at his trial by the three FBI agents is tainted, that confidence in the verdict is undermined by the investigation and report, and that he is entitled to a new trial. He also alleges that the remaining evidence against him was impeached or questionable, and that there is a reasonable probability that the outcome of the trial would have been different had he or counsel known of the reports and the facts underlying them.
The trial court, in considering this motion, correctly stated that in order to determine whether a Brady claim warrants relief, a defendant must establish: 1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); 2) that the defendant does not possess the evidence nor could he obtain it himself with reasonable diligence; 3) that the prosecution suppressed favorable evidence; and 4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. See Jones v. State, 709 So.2d 512 (Fla.1998).
The court did not directly address the first three prongs of the test. Rather, it concluded that Moss was not entitled to relief because he had not shown that there was a reasonable probability that the outcome of the proceedings would have been different had the investigations of the FBI Crime Laboratory and agents been disclosed. In so concluding, the trial court reviewed the trial testimony and attached various parts of it favorable to the state only, and found it was ample to support Moss' convictions, exclusive of the testimony of the FBI agents.
Rule 3.850 expressly allows an untimely motion to be filed challenging a criminal conviction, based on newly discovered evidence. See Owen v. Crosby, 854 So.2d 182 (Fla.2003). As explained in Wright v. State, 857 So.2d 861 (Fla.2003), newly discovered evidence is evidence that existed at the time of the trial but was unknown by the trial court, by the party or by counsel at that time, and it must further appear that neither the defendant nor defense counsel could have known of the evidence by the exercise of due diligence. If that is established, as it clearly is in this case, then the additional test is whether or not the newly discovered evidence is of such a nature as to probably produce an acquittal on retrial. Id.
Whether the FBI investigation and the OIG report are deemed Brady material[2] or newly discovered evidence, they are sufficient to require the lower court to determine whether the impeachment of the three federal agents at trial would have probably produced an acquittal. This determination normally requires *1010 an evidentiary hearing unless the motion, file and records conclusively show the defendant is entitled to no relief. McLin v. State, 827 So.2d 948 (Fla.2002). If a motion is denied without an evidentiary hearing, a defendant's factual allegations must be accepted as true to the extent they are not refuted by the record. McLin; Floyd v. State, 808 So.2d 175 (Fla.2002). At the evidentiary hearing in such a case, the trial judge must evaluate the weight of the newly discovered evidence and the evidence which was introduced at trial, so that the appellate court can fully evaluate the quality of the newly discovered evidence in the context of the entire case. See Sireci v. State, 773 So.2d 34 (Fla.2000); Jones v. State, 709 So.2d 512 (Fla.1998).
In this case, the trial court did not summarize the evidence presented at trial which was favorable to the defendant, or the allegations impeaching the state's evidence as set forth in Moss' motion. Those allegations must be accepted as true unless refuted by the record. They are sufficient to require an evidentiary hearing, or further consideration of the whole of the record.
For example, Moss alleged that Agent Malone, who testified at trial, was tied to improprieties in the FBI Crime Laboratory and cited in both reports as knowingly giving false or misleading testimony, preparing flawed reports, and destroying or misplacing exculpatory evidence. Malone presented evidence in this case that white cotton fibers found on the knife in Moss' truck (the alleged murder weapon) matched the fibers in the victim's blouse. But the material examined had been destroyed or misplaced, preventing an independent examination. Malone also testified he found a hair in Moss' truck consistent with the victim's hair, but he failed to isolate the hair, circumventing any independent examination.
The second FBI agent who testified at the trial, McInnes, was not specifically identified as being under investigation, but he worked in the FBI Laboratory during the time period covered by the investigation. He testified concerning blood found on Moss' knife, truck, clothes and hand. Moss' blood type was O, the co-defendant's was B, and the victim's was A. McInnes was unable to type the blood on Moss' hand or the knife. He found type A blood on Moss' clothing and a truck seat belt, but testified it was too small to analyze further and the samples were either destroyed or too small to retest.
FBI Agent Hallet testified concerning the tire tread of Moss' truck matching the tire tracks found at the scene where the victim's body was found. He also worked at the FBI Laboratory during the investigated time period. He admitted the clarity of the castings was minimal. Another FBI agent tested soil samples from the crime scene, and testified that the residue in the tire cast appeared to be sandy soil, not like the vegetation found where the victim's body and tire tracks were located.
In his motion, Moss also casts doubt on other evidence presented at the trial stemming from the fact that no eyewitness was able to identify him as participating in either of the two robberies, or the kidnapping and murder of the victim from one of the robbery scenes. There were discrepancies between the time when the store was robbed (9:26 p.m.), the location of Moss and the co-defendant at a pub established by persons at the pub (10:00 p.m. to 11:00 p.m.), and the medical examiner's estimate of the victim's time of death (12:00 p.m. to 2:00 a.m.). There were also questions concerning why the victim's wedding rings were not found in Moss' truck when it was first searched and how they suddenly later appeared there, and whether or not the victim wore rings on her finger.
*1011 Moss' fingerprints were not found on the bait bill taken from the store where the kidnapping occurred, and it was not found in his possession or his co-defendant's possession upon their arrest. Yet it was inexplicably found later at the jail. Fingerprints also failed to link Moss and his codefendant to other crime evidence; such as a wallet (the product of the first robbery); the cash register at the store, the knife and sheath, two cigarette filters found near the victim's body, and the victim's fingerprints were not found in or on Moss' truck allegedly used in the kidnapping.
In sum, it appears that the trial court failed to consider the totality of the evidence at trial in determining that the outcome would not have been different if the newly discovered evidence had been available at trial. Indeed, it appears only to have weighed the evidence favorable to the state. Based on the allegations in Moss' motion and the OIG and FBI investigations, the impeachment evidence could have been used to challenge the government witnesses' testimony in this case and that testimony appears to have been the strongest evidence linking Moss and his truck to these crimes. We conclude that this merits a review by the trial court of the new evidence in the context of all the evidence at trial. On remand, the trial court should hold an evidentiary hearing, or if possible, reconsider all of the evidence presented at trial and either deny the motion in an order evaluating the weight of both the newly discovered evidence and all of the evidence presented at trial or grant the motion.
REVERSED and REMANDED.
ORFINGER and MONACO, JJ., concur.
NOTES
[1] His convictions and sentences were affirmed on appeal, but the three year minimum mandatory terms were reversed. Moss v. State, 495 So.2d 234 (Fla. 5th DCA 1986), rev. dismissed, 503 So.2d 327 (Fla.1987). He also filed numerous post-conviction motions. See Moss v. State, 761 So.2d 1128 (Fla. 5th DCA 2000) (3.800(a)); Moss v. State, 744 So.2d 1012 (Fla. 5th DCA 1999) (3.800(a)); Moss v. State, 596 So.2d 1076 (Fla. 5th DCA 1992) (3.850 summary); Moss v. State, 5D92-877 (habeas corpus); Moss v. State, 5D90-2471 (habeas corpus).
[2] See Buenoano v. State, 708 So.2d 941 (Fla. 1998).