PER CURIAM.
Thomas Fletcher (Defendant) appeals an order summarily denying his rule 3.850 motion for postconviction relief as untimely and successive, though it was based on newly discovered evidence. We reverse.
Following a jury trial in January 1995, Defendant was found guilty as charged of first degree murder and armed robbery, alleged to have occurred on July 3, 1994. The victim was Defendant’s alleged drug dealer. The defense was voluntary intoxication,[1] but the only witness the defense presented at trial to support that defense was a substance abuse expert, who testified about cocaine intoxication and theorized as to Defendant’s state of mind and condition at the time of the murder to negate his specific intent to commit first degree murder and armed robbery. Defendant was found guilty as charged and was sentenced to life in prison for the murder and a concurrent term of years for the robbery.
In his timely rule 3.850 motion, Defendant claimed his defense counsel was ineffective for failing to call an individual named Jerry Rigsby, a friend to both Defendant and the victim, as a witness on Defendant’s behalf. Defendant alleged that counsel had his private investigator talk with Rigsby prior to trial, obtaining a statement that would support the defense. Rigsby would corroborate the fact that Defendant had been a long-time substance abuser, he had seen Defendant’s behavior while intoxicated, and he could support Defendant’s having been intoxicated on the date of the murder. Counsel did not advise Defendant why he did not call Rigs-by. Defendant alleged that the result of his trial would have been different if Rigs-by had testified. The trial court summarily denied this ground, explaining in its order that Defendant had made no showing that Rigsby would have been available to offer admissible testimony.
In 2009, Defendant filed another, apparently untimely, motion for postconviction relief, relying on subdivision 3.850(b)(1) (providing an exception to the two-year time limit when movant alleges “the facts on which the claim is predicated were unknown to the movant or the movant’s attorney and could not have been ascertained by the exercise of due diligence”).
The newly discovered evidence was presented in the form of an “affidavit” by Rigsby, a copy of which Defendant attached as exhibit A to his motion. Rigsby stated he tried to contact Defendant several times on July 3,1994, to get together for July 4, and when he got no answer, he went to the victim’s home, where he saw Defendant by the pool just hours before the killing; Defendant looked “out of it,” appeared tranquilized, was speaking gibberish, and did not seem to recognize *1251 Rigsby. A few days after the incident, the victim’s long-time personal attorney told Rigsby about the homicide; Rigsby did not believe it and visited Defendant in jail. Defendant told Rigsby he was pleading not guilty and would be in touch when he had a court date. Rigsby did not hear from Defendant for a while and then the victim’s attorney told him that Defendant had pleaded no contest to avoid the death penalty, receiving life without parole. In April 1995, Rigsby moved to England and lost contact with Defendant — until October 2008, when he received a message on MySpace from a friend of Defendant’s who told him Defendant was trying to get in touch with him.
Defendant then wrote Rigsby a letter telling him he thought Rigsby had abandoned him when Defendant needed him as a witness during his trial. Defendant’s lawyer sent someone to his apartment to get a statement, but he apparently had moved — but this was before Defendant’s court date, which was in January 1995, and Rigsby stated in his affidavit that no one had ever come by to see him on Defendant’s behalf. Had he known of Defendant’s court date, he would have been there, but no lawyer came or called or left a message or sent anyone.
The “affidavit” was dated January 14, 2009. Below Rigsby’s signature was that of a solicitor who confirmed that Rigsby had signed the statement in the solicitor’s presence, with a stamp indicating the solicitor was “authorised” to administer oaths, but nothing on the page indicated that an oath had been administered to Rigsby.
Based on the contents of Rigsby’s “affidavit,” Defendant concluded that his defense counsel and the victim’s attorney had conspired to deprive him of the sole witness who could testify to his state of intoxication prior to the offense, lying to him and to Rigsby to prevent Rigsby from testifying. Prior to trial, he had given Rigsby’s name and address to his attorney, to substantiate that he was intoxicated before the events that took place at the victim’s condominium. Counsel had told Defendant that his investigator had gotten from Rigsby exactly the kind of statement that was needed for his defense, and that without Rigsby’s independent testimony to corroborate his claim, the defense of voluntary intoxication would not succeed. However, a couple of weeks later, counsel asked Defendant if Rigsby still lived at the same address, and on the next visit, counsel told Defendant that Rigsby no longer lived at that address and could not be located.
Immediately thereafter, Defendant phoned the victim’s attorney to ask him if he knew where Rigsby was. That attorney told Defendant Rigsby wanted no part of him or his trial and had moved to England. He advised Defendant not to expect Rigsby to show up at his trial. These conversations occurred between August and October 1994.
Defendant pointed out that Rigsby’s statement that no one had contacted him on Defendant’s behalf contradicted defense counsel’s representation that his investigator initially did contact Rigsby and got a statement from him. Moreover, counsel’s representation that Rigsby had moved was contradicted by Rigsby’s statement that he did not move to England until April 1995, after Defendant’s trial. Finally, the victim’s attorney’s representation that Rigsby wanted nothing to do with him was contradicted by Rigsby’s statement, including that he was told by the victim’s attorney that Defendant had pleaded no contest in order to get a life sentence. Thus, Defendant concluded that the two attorneys had perpetrated a fraud on the court and a miscarriage of justice.
Defendant argued that the contents of Rigsby’s affidavit constituted newly discovered evidence because there was no *1252 way Defendant could have known of the fraud of his attorney and the victim’s attorney in keeping Rigsby from testifying at his trial, and, but for the assistance of his friend, Defendant still would not know what they had done to keep Rigsby from testifying for him. Rigsby’s statement was not known to Defendant or the trial court at the time of the trial, and due to his counsel’s being a party to the fraud, his knowledge could not be counted against Defendant when determining whether the information was newly discovered; Defendant had used the utmost diligence to discover it. Second, Rigsby’s testimony probably would have produced an acquittal of the first degree murder charge so that Defendant probably would have been convicted of a lesser offense and would have received a guidelines sentence, not life in prison.
The state argued below that the motion was untimely because there was no showing why the instant claims could not have been presented in a timely fashion. Because the claim of ineffective assistance of counsel for failing to call Rigsby already had been raised in the prior motion, it also argued that this claim was successive. Finally, in a footnote, the state suggested that if the trial court disagreed, it could dismiss the petition without prejudice because Rigsby’s “affidavit” was not under oath. The trial court did not act on this suggestion, but summarily denied the motion. The state maintains the same position in this court, and also argues that Spera v. State, 971 So.2d 754, 755 (Fla. 2007), does not apply to untimely successive motions.
However, as the state does acknowledge, this court has applied Spera to insufficient claims of newly discovered evidence. E.g., Slade v. State, 10 So.3d 1205 (Fla. 4th DCA 2009).
Had Rigsby’s “affidavit” been properly sworn, then an evidentiary hearing might have been required to determine whether to set aside Defendant’s conviction on the basis of newly discovered evidence, see Jones v. State, 709 So.2d 512, 521 (Fla. 1998),[2] unless Rigsby’s allegations were conclusively refuted by the record, or it could be determined, from the face of the sworn allegations, that they are inherently incredible. McLin v. State, 827 So.2d 948 (Fla.2002).
Because Rigsby’s “affidavit” does not contain a proper oath, on remand the trial court should strike the motion with leave to refile the motion with a properly sworn affidavit, within a reasonable time period, pursuant to Spera. Compare Moss v. State, 943 So.2d 946 (Fla. 4th DCA 2006) and Hall v. State, 11 So.3d 1002 (Fla. 4th DCA 2009)

Reversed and Remanded.

GROSS, C.J., DAMOORGIAN and LEVINE, JJ., concur.

. Voluntary intoxication was a recognized defense at the time. See § 775.051, Fla. Stat. (2010) (abolishing voluntary intoxication defense effective Oct. 1, 1999); Ch. 99-174, §§ 1-2, at 968, Laws of Fla.

. In that opinion, the standard was expressed as follows:
First, in order to be considered newly discovered, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence.” Torres-Arboleda v. Dugger, 636 So.2d 1321, 1324-25 (Fla.1994).
Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. Jones [v. State], 591 So.2d [911] at 911, 915 [Fla.1991], To reach this conclusion the trial court is required to "consider all newly discovered evidence which would be admissible” at trial and then evaluate the "weight of both the newly discovered evidence and the evidence which was introduced at the trial.” Id. at 916.