ROTHENBERG, J.
Twenty-six years after Juan Alfonso Hernandez (“the defendant”) entered his plea of guilty to sale of cocaine, he sought postconviction relief pursuant to rule 3.850, Florida Rules of Criminal Procedure, on the basis of newly discovered evidence. After conducting an evidentiary hearing, the trial court weighed the evidence, made factual findings regarding the credibility of the witnesses, and denied the defendant’s motion. Because the trial court’s findings are supported by competent substantial evidence, we affirm. See McLin v. State, 827 So.2d 948, 954 (Fla.2002); Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997) (holding that where the trial court’s findings are supported by competent substantial evidence, the appellate court must not substitute its judgment for that of the trial court as to questions of fact, the credibility of the witnesses, or the weight to be applied to the evidence).
A brief summary of the evidence is as follows. In the early morning hours of November 5, 1983, R.B., a juvenile, approached Michael Suarez asking to purchase some cocaine. Moments later, the defendant, “Beta”, and Manuel Aguiar drove up in the defendant’s white, four-door Peugeot. Beta was driving, the defendant was seated in the front passenger seat, and Aguiar was seated behind the defendant in the back right passenger seat. Suarez approached the car and spoke briefly to the occupants. According to Deputy Churchill, who was seated in an unmarked police car with Officer Orta, he observed R.B. hand some money to Suarez, Suarez hand the money to the defendant through the open passenger window, the defendant hand a plastic package containing a white substance to Suarez, and Suarez hand the package to R.B. Deputy *524 Churchill testified that he was parked approximately twenty feet away facing the area where the drug transaction took place; the parking lot was well lit with “super bright” lamps lighting up the entire area; and he immediately recognized the car and the defendant.[1]
R.B., Suarez, and the defendant were subsequently arrested. Suarez, ultimately provided a sworn statement wherein he testified that the defendant was the person who sold the cocaine to R.B., with Suarez acting as the intermediary. After Suarez was listed as a witness against the defendant, he was deposed by the defendant’s attorney and testified consistent with his prior sworn statement as summarized above. Twenty-six years later, after Suarez saw the defendant in jail, Suarez recanted his testimony. It is Suarez’s recantation that forms the basis of the defendant’s motion to set aside his plea.[2]
At the evidentiary hearing conducted by the trial court, Suarez testified that the two sworn statements he provided in 1983 were false-that the person who he obtained the cocaine from was not the defendant, but rather, the backseat passenger, Agu-iar. Suarez claimed that he perjured himself in 1983 because his family had an unrelated, unfounded grudge against the defendant, and he was pressured to implicate the defendant by his father and the Assistant Public Defender, representing him in 1983.
Deputy Churchill also testified at the evidentiary hearing. He stated that he remembered this incident because it was his first and only plain clothes assignment, the first time he had witnessed a hand-to-hand transaction, and he knew the defendant. Deputy Churchill testified that he witnessed the transaction and clearly saw Suarez hand the money to the defendant and the defendant hand the packaged cocaine to Suarez.
The defendant testified that he was innocent of the charges and pled guilty based on Suarez’s expected testimony at trial. The defendant, however, admitted on cross-examination that he never told his lawyer that Aguiar was the one who provided the drugs to Suarez, and as an explanation, stated that he was “no snitch.” It was also established that: Suarez’s father is deceased; the man Suarez and the defendant are now implicating as the source of the drugs — Aguiar—is also deceased; and the statute of limitations has long passed to prosecute Suarez for the claimed perjured testimony.
In denying the defendant’s motion for postconviction relief, the trial court found Suarez and the defendant not credible. We affirm based on the totality of the circumstances including: (1) Suarez’s and the defendant’s criminal records; (2) Suarez waited twenty-six years to change his testimony; (3) Suarez’s recantation was made after the running of the statute of limitations for perjury, see Moss v. State, 943 So.2d 946, 948 (Fla. 4th DCA 2006) (permitting consideration of and a finding that the recantation lacked indicia of reliability when the recantation was made after *525 the statute of limitations for perjury had run); (4) the defendant never told anyone else, including his lawyer, that Aguiar supplied the drugs; (5) the defendant pled guilty to the charges, not “no contest”; (6) “Florida law treats recantations with suspicion, and requires a new trial only if the court is satisfied that the recantation is true,” McLin, 827 So.2d at 955; see also Davis v. State, 26 So.3d 519, 526 (Fla.2009) (holding that recantation testimony may provide a basis to vacate a conviction if, and only if, it constitutes newly discovered evidence and “the court is satisfied that the recantation is true, and ... the recanted testimony would probably render a different outcome in the proceeding”); (7) the trial court was not satisfied that the recantation was true; and (8) “[w]e recognize and honor the trial court’s superior vantage point in assessing the credibility of witnesses and in making findings of fact,” Porter v. State, 788 So.2d 917, 923 (Fla. 2001).
Affirmed.

. Deputy Churchill testified that: (1) the defendant's car was distinctive as it was the only Peugeot in Key West; and (2) he knew the defendant, who was approximately five feet five inches tall and weighed approximately 275 to 290 pounds, from previous encounters.

. Both Suarez and the defendant were incarcerated at the same facility at the time of this meeting. Suarez had been convicted of subsequent crimes. The defendant violated his probation on the sale of cocaine offense by trafficking in cocaine, served his sentence, was subsequently convicted of trafficking in cocaine a second time, and was serving an enhanced sentence as a habitual offender based on the prior sale and prior trafficking cases.