# Third District Court of Appeal

## State of Florida

Opinion filed October 16, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-2292
Lower Tribunal No. F01-34564A
_____

**Michael D. LoCascio,**
Petitioner,

vs.

**The State of Florida,**
Respondent.

A Case of Original Jurisdiction – Habeas Corpus.

Michael D. LoCascio, in proper person.

Ashley Moody, Attorney General, and Linda Katz, Assistant Attorney General, for respondent.

Before SCALES, LINDSEY, and MILLER, JJ.

MILLER, J.

By petition for writ of habeas corpus, Michael LoCascio seeks reconsideration of our opinion in LoCascio v. State, 337 So. 3d 399 (Fla. 3d DCA 2021), on the basis of manifest injustice. The crux of his petition is that this court erroneously determined his newly discovered evidence claims had been previously litigated and were therefore procedurally barred. Finding no merit to the petition, we deny relief.

**BACKGROUND**

Sylvia LoCascio was murdered in the Coral Gables residence she shared with her teenaged son the night before she was scheduled to appear for a deposition in her contentious divorce case. A metal asp was found near her body, and a discarded duffel bag containing a knife, surgical gloves, a baton holder, and credit cards and identification belonging to Sylvia was recovered underneath a shirt in a nearby yard. Two witnesses, one of whom was a police officer, noticed a unique camper truck in the vicinity of the home on the evening of the crime.

Law enforcement officers initially suspected Sylvia's estranged husband, Edward LoCascio, but the focus of the investigation soon shifted to his brother, petitioner, after "surveillance camera footage and cell phone records established that [Edward] could not have committed the crimes

2

himself." Locascio v. Sec'y, Fla. Dep't of Corr., 685 F. App'x 837, 840 (11th Cir. 2017).[1]

Acting on a tip from one of Edward's employees, officers traveled to North Carolina to interview petitioner and inspect his truck. The vehicle was wet inside and missing carpeting and seat covers. Petitioner admitted he was in Miami on the day of the murder but claimed he had merely planned to visit his brother. He was taken into custody, and officers found he had contact dermatitis on his body consistent with sitting on a wet surface for an extended period. He was then transported to Miami.

While in pretrial detention, petitioner told a fellow detainee he murdered Sylvia because she was trying to take his brother's money. He then offered two inmates compensation in exchange for planting DNA evidence, going so far as to provide DNA samples on a shirt and in a pen. One of the inmates turned the items over to law enforcement.

Subsequent DNA testing linked petitioner to evidence recovered from the crime scene. He was indicted for first-degree murder, conspiracy to commit first-degree murder, armed burglary with an assault, and armed robbery with a deadly weapon. The matter proceeded to trial, and, on the

---

[1] In Locascio v. Secretary, Florida Department of Corrections, the Eleventh Circuit extensively laid out the relevant facts in reviewing LoCascio's federal habeas petition. See generally 685 F. App'x at 838–43.

3

third day, the State disclosed that petitioner's DNA was on the shirt draped over the discarded duffel bag. The results were admitted into evidence over defense objection, and the reliability of the DNA became a central issue:

> During cross-examination, defense counsel asked [the DNA analyst] about his last-minute testing of the blue shirt, but did not ask [him] about the premature release of the DNA test results to the prosecutor before those results were co-read by Dr. Hass. Instead, defense counsel's cross-examination attempted to show [the analyst's] DNA testing was unreliable by emphasizing [his] lack of qualifications and his crime lab's failure to use corroborative testing to confirm results or to use other more-advanced methods of DNA analysis employed by other crime labs.
>
> In addition, defense counsel questioned [the analyst] about his violation of an anti-contamination protocol in 37 different criminal cases. In these 37 cases, Dr. Hass, as the co-reader, discovered that [the analyst's] control did not include a reagent, an ingredient that ensures no contamination of the test. [The analyst] determined that his error was due to his needing a new eyeglasses prescription, and he had to rerun those tests. One of those 37 cases involved [the analyst's] testing of the white t-shirt that petitioner Locascio's cellmate gave to investigators.

Id. at 842.

The jury convicted petitioner of the crimes, as charged, and the trial court imposed a sentence of life in prison. This court affirmed on direct appeal. See LoCascio v. State, 26 So. 3d 593 (Fla. 3d DCA 2009).

## COLLATERAL RELIEF MOTIONS

Petitioner filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel, and this court denied relief. See LoCascio

4

v. State, 76 So. 3d 304 (Fla. 3d DCA 2011). Petitioner thereafter filed a motion for postconviction relief below alleging ineffective assistance of trial counsel. In the motion, petitioner relied heavily upon issues relating to the lead analyst's testimony and testing methodology to justify relief. The trial court denied the motion, and this court affirmed. See LoCascio v. State, 88 So. 3d 949 (Fla 3d DCA 2012).

Petitioner subsequently filed a petition for writ of habeas corpus in the Southern District of Florida. The district court denied the motion but granted a certificate of appealability on two issues: (1) whether the prosecutor failed to knowingly correct the lead analyst's false testimony regarding laboratory protocol in violation of due process and Giglio v. United States, 405 U.S. 150 (1972); and (2) whether the failure to impeach the analyst amounted to ineffective assistance of counsel. The Eleventh Circuit affirmed in an elaborated opinion. See Locascio, 685 F. App'x 837.

Petitioner then sought certiorari review in the United States Supreme Court, see LoCascio v. Jones, 583 U.S. 1104 (2018), reh'g denied, 584 U.S. 911 (2018), and additionally filed a successive postconviction motion in the state trial court alleging newly discovered evidence. He again contended the DNA testing methodology was unreliable and the lead analyst committed perjury. He supported his claims with allele call sheets, interpretation notes,

5

and documentation detailing other cases and the role of assisting technicians. The trial court summarily denied the motion, and this court affirmed. See LoCascio v. State, 337 So. 3d 399 (Fla. 3d DCA 2021). In doing so, the court found that "[petitioner] has previously presented these issues, along with the purported relevant evidence, before both the trial court and this Court. Each time, this court found no merit to the claims." Petitioner now seeks reconsideration of that conclusion.

**ANALYSIS**

Article I, section 13 of the Florida Constitution mandates the availability of the writ of habeas corpus. 2 Fla. Prac., Appellate Prac. § 9:6 (2019); see Art. I, § 13, Fla. Const. "'[J]udicial review in the form of habeas proceedings serves as a backup plan' to guard against such erroneous deprivations." Parks v. State, 319 So. 3d 102, 105 (Fla. 3d DCA 2021) (quoting J.R. v. Hansen, 736 F.3d 959, 969 (11th Cir. 2013)). But it is axiomatic the writ "may not be used to . . . raise issues which would be untimely if considered as a motion for postconviction relief under rule 3.850." Id. (quoting Barnard v. State, 949 So. 2d 250, 251 (Fla. 3d DCA 2007)).

Despite this latter prohibition, petitioner correctly argues that this court has applied a manifest injustice exception to revive otherwise procedurally barred claims. See, e.g., Perez v. State, 118 So. 3d 298, 301–02 (Fla. 3d

6

DCA 2013) (remanding for evidentiary hearing when manifest injustice claim was not refuted by the record). But this exception applies only to an extraordinarily narrow category of claims. And merely incanting the term "does not make it so." Beiro v. State, 289 So. 3d 511, 511 (Fla. 3d DCA 2019).

Instead, a movant must demonstrate an error "so patently unfair and tainted that it is manifestly clear to all who view it . . . ." Parks, 319 So. 3d at 110 (quoting In re Marinari, 596 B.R. 809, 819 (Bankr. E.D. Pa. 2019)) (internal quotations and brackets omitted); see also Johnson v. State, 226 So. 3d 908, 911 (Fla. 4th DCA 2017) ("[O]ur authority to grant a writ of habeas corpus based on manifest injustice should only be exercised in 'uncommon and extraordinary circumstances.'") (quoting Stephens v. State, 974 So. 2d 455, 457–58 (Fla. 2d DCA 2008)); Cuffy v. State, 190 So. 3d 86, 87 (Fla. 4th DCA 2015) (explaining that manifest injustice applies as an exception "in only the rarest and most exceptional of situations"); Hechevarria-Figuerro v. State, 305 So. 3d 755, 759 (Fla. 3d DCA 2020) ("[F]inding no obviously unfair, shocking to the conscience, clear or openly unjust act, or extraordinary and fundamental flaw in the plea proceedings, evincing manifest injustice, we deny the petition for writ of habeas corpus.") (internal quotations and citations omitted).

7

We conclude petitioner has failed to meet this exacting standard. Distilled to its essence, the petition alleges that the predecessor panel erroneously rejected each of his newly discovered evidence grounds. The underlying motion once again centered around aberrations in the comparison process and the purported invalidity of the ensuing results. The fact that petitioner augmented his allegations with greater detail and additional documentation does not transform the character of his claims.[2]

Petitioner has repeatedly assailed the reliability of the DNA results and the integrity of both the lead analyst and his own legal team. These perceived deviations from standard protocol assumed front and center stage at trial. Similarly, each of the collateral attacks on the judgment and sentences implicated laboratory digressions, the failings of personnel, and the ensuing accuracy of the results. Reports, allele call sheets, and interpretation notes have all been presented previously.

---

[2] We further agree with the conclusion that the additional claims relating to allegedly contradictory testimony and the relationship of witnesses fail under the test set forth in McLin v. State, 827 So. 2d 948, 956 (Fla. 2002) ("In Jones, this Court articulated a two-step inquiry for determining whether a defendant is entitled to relief for newly discovered evidence. First, the facts must have been unknown at the time of trial and be such that they could not have been known by the exercise of due diligence. The second prong, which this Court referred to as the 'probability standard,' requires that 'in order to provide relief, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.'") (quoting Jones v. State, 591 So. 2d 911, 915–16 (Fla. 1991)) (internal citations omitted).

Because the core allegations have been considered and reconsidered at the trial and appellate levels, they are successive and therefore not newly discovered.  See Bogle v. State, 322 So. 3d 44, 46–47 (Fla. 2021); see also Cole v. State, 49 Fla. L. Weekly S211 (Fla. Aug. 23, 2024) ("At its core, Cole's latest argument related to his time at the Dozier School is only another variation of his claims that were raised and rejected in his first and second successive motions for postconviction relief.  As a result, he is prohibited from raising this issue once more."); Carroll v. State, 192 So. 3d 525, 526–27 (Fla. 1st DCA 2016) ("Enough is enough.  The postconviction process does not exist simply to give prisoners something to do in order to help them pass the time as they serve their sentences, and every minute the courts are required to spend on meritless postconviction filings is time that cannot be spent on other potentially meritorious cases.  This is particularly true for successive postconviction claims that have already been presented to, and rejected by, the courts.").

Further, the allegations, even if proven, do not diminish the overwhelming record evidence of guilt and therefore fail under the required "probably produce an acquittal on retrial" prong of the applicable test.  See McLin, 827 So. 2d at 956–57 (quoting Jones, 591 So. 2d at 915); Owen v.

9

<u>State</u>, 364 So. 3d 1017, 1026 (Fla. 2023); <u>Hurst v. State</u>, 18 So. 3d 975, 995 (Fla. 2009).  Hence, we deny the petition.

Petition denied.